Dale A. ODEGARD, Plaintiff
and Appellee,

v.

Vickie Ann ODEGARD, Defendant
and Appellant.

Civ. No. 9349.

Supreme Court of North Dakota.

Oct. 26, 1977.

Kathryn L. Dietz, Wahpeton, for plaintiff and appellee; argued by Gary D. Miller, senior law student, Grand Forks.

P. W. Lanier, Jr., of Lanier, Knox & Olson, Fargo, for defendant and appellant.

VOGEL, Justice.

The defendant, Vickie Odegard, appeals from a judgment of the district court of Sargent County granting a divorce to both the plaintiff, Dale Odegard, and the defendant, on the ground of irreconcilable differences. On appeal, the only issue is whether or not the trial court's grant of custody of the son of the parties, Justin, to the husband and the husband's parents is clearly erroneous.

The parties were married in 1971, the son was born in 1973, and the family lived to-

gether until late July of 1976, when the mother took the child to Fargo, where she searched for a job and an apartment. When the search proved more difficult than anticipated, she left the child with the father, who had moved in with his parents, and returned to Fargo to continue her search. There is a disagreement as to who had physical custody of Justin at various times thereafter. Apparently he was moved back and forth. On one occasion he seemed ill, and the paternal grandparents refused to let the mother take him back to Fargo.

The father instituted divorce proceedings and, pursuant to an order to show cause, custody was placed with his parents, with whom Justin had been living since approximately December 14, 1976.

At both the hearing on the order to show cause and at the trial, there was testimony regarding the living conditions in the home of the parties. During the course of the marriage, each party often spent evenings away from home, he usually in bars or bowling alleys and she driving around with girlfriends. As a result, Justin usually spent his evenings in the company of babysitters. Several of the babysitters testified that the house often was a mess, the baby's room and bed in disorder, and that they were allowed to drink beer and have guests as an incentive to babysit.

During the time the parties lived together, the father's participation in caring for the child was insubstantial.

His father and mother, aged 64 and 58, live in a five-bedroom home, only three bedrooms of which were in use due to repairs being made in the others. Three of the plaintiff's brothers also live in the house. The grandparents testified that they are in good health and that it was "okay" to have Justin in their home. Since Justin has been living with them, he has participated to some extent in feeding the chickens and other farm chores and in some activities with his father.

It is fair to say that the conduct of both parents has improved since the court intervention began.

In his memorandum opinion the trial judge found that the best interest of the child would be served by granting custody jointly to the father and the grandparents, rather than to the mother.[1] He pointed to her absence from home for many evenings without explanation or good cause, her inducements to teenage babysitters with promises of beer and a place to meet friends, her failure to keep Justin's bedroom and the home clean, and said that her general lifestyle indicated that she was not ready to settle down and assume responsibility as a parent. Although the court did not go into detail as to the father, it seems apparent that the court also concluded that granting custody to the father alone would not be in the best interest of the child.

The mother asserts that the findings are clearly erroneous, that it is unfair to take custody of the child from her merely because she was a poor housekeeper, and that it was improper to give the custody to "strangers," the grandparents. She also asserts that the grandparents are too old to raise a pre-school child, and that the "tender years" doctrine is being ignored.

■ Ever since *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972), this court has treated the finding that the best interest of the child requires custody in one parent or the other as a finding of fact which we will not reverse unless clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *Silseth v. Levang*, 214 N.W.2d 361 (N.D.1974). We have also held frequently that custody, once granted, should not be changed for light or transient reasons, since children should not be bandied about, subject as they are to psychological damage in case of frequent changes of custody. See, generally, *Filler v. Filler*, 219 N.W.2d 96 (N.D.1974), majority and concurring opinions; *Silseth v. Levang, supra.*

We have recognized that temporary-custody orders have a tendency to become permanent-custody orders, partly because of

---

1. The mother is given custody for one month each summer and one day each week.

the reluctance of the courts to make changes in custody for the reason stated. *Kostelecky v. Kostelecky*, 251 N.W.2d 400 (N.D.1977).

The present case resembles in many ways *Silseth v. Levang, supra.* In that case, as in this one, neither parent was found to be unfit and custody of a child of tender years was involved. The award was ultimately given to the father, who lived with his parents. That case differed from the present one in that both parties had remarried, and a statute was in existence giving preference to the mother where the child in question was of "tender years." Sec. 30–10–06, N.D.C.C.

That statute has now been repealed. The repeal was included in Chapter 257, Session Laws of 1973, North Dakota's version of the Uniform Probate Code, which contains no language equivalent to the former Section 30–10–06. See Article V, Uniform Probate Code, Chapters 30.1–26 and 30.1–27, N.D. C.C.

■ The mother asserts that other States have held that grandparents are considered as strangers in awarding custody, citing 27B C.J.S. *Divorce* § 308, p. 446. See *Blow v. Lottman*, 75 S.D. 127, 59 N.W.2d 825 (1953). Be that as it may, this court has not done so and has granted custody to grandparents, either alone or jointly with a parent, on several occasions. *In Interest [Custody] of D. G.*, 246 N.W.2d 892 (N.D.1976); *McKay v. Mitzel*, 137 N.W.2d 792 (N.D. 1965); *Borg v. Anderson*, 73 N.D. 95, 11 N.W.2d 121 (1943).

■ Of course, the repeal of the statute setting forth the "tender years" doctrine does not alter the observed fact that mothers of infants are most often better able to care for them than the fathers are. But that fact is only one of the many considerations to be weighed by the trial court in making its finding as to the best interest of the child, and to be considered by us in determining whether the finding was clearly erroneous. Under the circumstances here, we cannot say that the finding was clearly erroneous. It is possible that we might have made a different determination if we had tried the case in the first instance, but we did not.

■ Much was made in argument of the fact that the trial court found neither parent to be unfit. That is true, but fitness of parents is not the test for awards-of-custody matters in this State. The test is the best interest of the child. If we were to decide this case on the basis of the fitness of the parents as parents or as spouses, we might well call it a draw, giving passing but low marks to both, or we might give the wife higher marks for concern for the child. But fitness is not the test. *McKay v. Mitzel, supra.*

Nor is fairness to the parents a test. If we had to decide custody questions on the basis of what is fair to the parents, our problem would be insuperable. In one sense, it is not fair to deprive any fallible parent of custody of his or her only child, as to whom the parent may have acted thoughtlessly but never with intentional cruelty. But fairness to parents is not the test, either. When the test of the best interest of the child is applied, choice must necessarily be made between two or more possible but imperfect dispositions.

■ Finally, the argument is made that the trial court's award of custody to grandparents and a parent who reside in a rural community makes it almost inevitable that Justin will grow up to be a farm laborer, while an award of custody to the mother, whose parents are relatively wealthy, would offer him more material advantages. Again, this is a matter which can be considered by the courts, but relative wealth is not controlling. *Ex parte Sidle*, 31 N.D. 405, 154 N.W. 277 (1915).

The trial judge observed the witnesses, as we cannot. He made a difficult and no doubt agonizing choice between, on the one hand, grandparents whose enthusiasm for a new responsibility was somewhat restrained and an undemonstrative and passive father, and, on the other hand, a mother who loves her son but needs outside stimulation requiring absence from the home more fre-

quently than most mothers are absent. While we suspect that the mother, and probably the father also, has matured a great deal since the separation, we cannot say that the findings of fact made by the trial judge were clearly erroneous. We think he did the best he could under difficult circumstances, and we are not convinced that we could do better. If he and we are in error, and if the dire predictions of the appellant come to pass, the court will be open for a petition for change of custody based on changed circumstances.

Affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.