**Margaret Ann HUST, Plaintiff and Appellant,**

v.

**Michael Allen HUST, Defendant and Appellee.**

**Civ. No. 9742.**

Supreme Court of North Dakota.

July 17, 1980.

James A. Wright, of Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for plaintiff and appellant.

William A. Mackenzie, of Mackenzie & Jungroth, Jamestown, for defendant and appellee (on brief).

VANDE WALLE, Justice.

In its judgment entered December 17, 1979, the Stutsman County district court granted a divorce to Margaret Ann and Michael Allen Hust and awarded temporary custody for one year of their daughter, Jes-

sica Lynn Hust, to Michael's parents, Norma and Harry Hust. Margaret has appealed from that part of the judgment awarding temporary custody of Jessica to her paternal grandparents. We reverse and remand with directions for a new hearing.

Margaret and Michael were married on June 16, 1978, and they separated during July of 1979. On October 4, 1979, Margaret filed a complaint in the Stutsman County district court seeking a divorce from Michael and custody of Jessica. Michael filed an answer and counterclaim seeking a divorce from Margaret and custody of Jessica.

A hearing was held on December 6, 1979. At the hearing counsel for Michael was allowed to amend his answer and counterclaim, without objection by Margaret's counsel, to request that custody of Jessica be placed jointly with Michael and his parents, Norma and Harry Hust. At the time of the hearing Margaret was 19 years old, Michael was 21 years old, and Jessica was approximately 11 months old.

Margaret testified that Michael had been "fooling around" and that she and Michael separated during July of 1979 when Margaret moved from the couple's home with Jessica because "he [Michael] wanted me out." Prior to the divorce proceedings, Margaret kept custody of Jessica except for short periods of time when Jessica would stay with Michael or his parents for visitation. Margaret also testified that at the time of the hearing she had been employed for one week at the Jamestown Holiday Inn as a waitress and that while she was working a licensed babysitter took care of Jessica.

The only evidence in the record regarding Jessica's mental or physical condition was the following testimony of Margaret:

"A. Yes. Norma and Harry enjoy the child, and for quite a long time since we had the child all I hear about is how they want to see the child eat a turkey leg at Thanksgiving and I felt it would be—

"Q. An 11-month-old child isn't going to do too much of that.

"A. Mine would. She has been walking since 7 months old; she has got 4 teeth; she is very smart—she is about in the 2 or 3-year level. I have had her in for tests and she is quite advanced for her age."

There is no evidence in the record to indicate that Jessica had ever failed to receive adequate or proper care or that her well-being had been jeopardized.

Margaret has raised the following issues on appeal:

(1) Whether the court's custody decision is clearly erroneous because it is unsupported by the record and because the court failed to apply the "best interests of the child" test.

(2) Whether the court's findings of fact are clearly erroneous because they fail to state the factual basis upon which the court made its custody decision.

In a divorce proceeding the court must award custody of a minor child based upon a determination of "the best interests and welfare of the child." Secs. 14–05–22(1) and 14–09–06.1, N.D.C.C. Section 14–09–06.2, N.D.C.C., has codified those factors which the court must consider in making a custody determination in a divorce proceeding. *Lapp v. Lapp*, 293 N.W.2d 121 (N.D. 1980). The trial court's custody determination is a finding of fact which will not be set aside on appeal unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P. However, in making its custody determination "in the best interests of the child" the court must be cognizant of the public policy favoring the family relationship between parent and child as well as the parents' fundamental right to the custody and companionship of their children.

This court has recognized that parents have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person. *In Interest of M. M. C.*, 277 N.W.2d 281 (N.D. 1979). Although the right of a parent to the custody of his/her child is not absolute, the courts are reluctant to remove

a child from the parents' custody unless it is necessary to prevent serious detriment to the welfare of the child. *In Interest of M. M. C., supra.* As Justice Sand so pointedly states in *Bjerke v. D. T.*, 248 N.W.2d 808 (N.D. 1976):

"... it is not reason enough to deprive parents of custody that their home is not the best or most modern that could be offered to the child, so long as the child does not suffer physical or moral harm, or lack of food or clothing. Poverty, lack of education or of culture alone are never justification enough for severing the ties that bind families together." 248 N.W.2d at 813.

■ Section 27–20–01, N.D.C.C., states that it is the public purpose of the Uniform Juvenile Court Act to provide for the care, protection, and moral, mental, and physical development of children "... in a family environment whenever possible, separating the child from his parents only when necessary for his welfare or in the interests of public safety; ..." Thus the court cannot, under Section 27–20–30, N.D.C.C., remove a child from the parents' custody in the best interests of the child [1] unless there is a grave reason to do so, i.e., the child has been found to be a deprived child. *Bjerke v. D. T.*, 248 N.W.2d 808 (N.D. 1976).

■ Although the determinative standard for awarding custody in a divorce action is "the best interests of the child" the right of the parents to the custody of their children does not simply vanish upon the initiation of a divorce action by one or both parents. The relationship between the parents and their children continues to exist and so does the public policy of encouraging and fostering such parent-child relationships. We are of the view, therefore, that in a divorce proceeding, an award of custody to the grandparents rather than to one

or both of the child's natural parents is clearly erroneous unless exceptional circumstances require that such a custody disposition be made "in the best interests of the child." To illustrate this standard it is helpful to review past cases in which this court has upheld a custody award of a minor child to the grandparents.

This court in *Odegard v. Odegard*, 259 N.W.2d 484 (N.D. 1977), upheld, in a divorce proceeding, a joint award of custody to the natural father and the paternal grandparents. The joint-custody award in *Odegard* is clearly distinguishable from the custody disposition made in the instant case wherein neither parent was given any degree of custody. There are other distinguishing factors. In *Odegard* there was evidence that both parents "often" spent evenings away from home and that their child "usually spent his evenings in the company of babysitters." There was also evidence that "the house often was a mess, the baby's room and bed in disorder," and that the babysitters "were allowed to drink beer and have guests as an incentive to babysit." 259 N.W.2d at 485. There was also evidence in *Odegard, supra,* that the child's mother voluntarily left physical custody of the child with the father and grandparents at various times prior to the divorce action while she resided in Fargo to search for a job.

In the instant case, Margaret retained physical custody, care, and control of Jessica until the court ordered that custody of Jessica be placed with her grandparents. There is no evidence that Jessica, while in the custody of her mother, did not receive proper care. There is some evidence, however, that on a couple of occasions Margaret smoked marijuana for the purpose of making Michael angry, but there is no evidence that on such occasions Jessica was left unattended or that her welfare was jeopardized.

---

1. In the case of *In Interest [Custody] of D. G.*, 246 N.W.2d 892 (N.D. 1976), this court recognized that the same test applies for making a custody determination in a divorce action as in the dispositional phase of a deprived-child proceeding under the Uniform Juvenile Court Act:

"The test to be applied in a custody determination is usually described as the 'best interests of the child' test. [Citations omitted.] While the cases cited involve custody issues under the divorce statutes, the Uniform Juvenile Court Act employs the same concept." 246 N.W.2d at 895.

This court, in the case of *In Interest [Custody] of D. G.*, 246 N.W.2d 892 (N.D. 1976), reversed the trial court's custody award of a six-year-old boy (D. G.) to his father and remanded with instructions that custody of the boy be granted to his maternal grandparents. The case involved exceptional circumstances. D. G. had lived with his maternal grandparents for his entire life. His father left the community when D. G. was one year old and did not return to see him until D. G. was 4½ years old. When D. G. was two years old his parents were divorced and custody was awarded to his mother who, along with D. G., resided with her parents. The maternal grandparents petitioned the court for termination of parental rights and adoption of the boy. The trial court determined that the child was a deprived child. The court also determined that in relation to D. G.'s mother, who had a history of severe mental problems and emotional disturbances, the deprivation was likely to continue, and the court terminated the mother's parental rights. However, the court, finding that the deprivation in relation to the father was not likely to continue, did not terminate the father's parental rights. Upon those determinations the trial court awarded custody of the boy to the father.

This court, in reversing the trial court's custody award, instructed the court to award custody of D. G. to his maternal grandparents and stated:

"Once the child has been in the custody of a party, that custody will be changed *only* upon a showing that such a change is *necessary* to protect and promote the child's welfare." [Emphasis in original.] 246 N.W.2d at 895.

This court concluded that D. G., who had lived with his maternal grandparents all his life, had established a parent-child relationship with his grandparents to whom he turned for help and reassurance and that "continuity in the child's life can be preserved by maintaining custody with the grandparents." 246 N.W.2d at 895.

The *D. G.*, case involved the type of exceptional circumstances that warranted a grant of custody to the grandparents. Once the child was found to be "deprived," the parents' fundamental right to the child's custody was subrogated to the court's authority to make a custody determination in the best interests of the child pursuant to Section 27–20–30, N.D.C.C.

In the instant case, unlike the situation in *D. G.*, the child's mother, not the grandparents, had maintained physical custody and control of the child prior to the court's custody determination and there was no finding of deprivation or of other exceptional circumstances requiring that custody be granted to the grandparents.

In *McKay v. Mitzel*, 137 N.W.2d 792 (N.D. 1965), this court upheld the trial court's determination that it was in the best interests of the children to remain in the custody of their maternal grandparents. The *Mitzel* case also involved exceptional circumstances.

In *Mitzel*, the parents were divorced in 1955 and custody of the three minor children was awarded to the mother. The mother died in 1963, and the children were living with their maternal grandparents at the time their father, who was remarried and residing in Colorado, petitioned the court for custody of the children. At the time of the custody proceeding the three children were aged 15, 14, and 10½ years, and all three expressed a desire to remain with their grandparents. Thus the *Mitzel* case involved a situation in which the children were in the physical custody of their grandparents for a relatively long period prior to the court's custody determination; the children's mother was no longer living; and the children's father, who had remarried and established a second family, had not acquired nor sought custody of the children for a period of approximately ten years. Under those exceptional circumstances, this court upheld the trial court's award of custody to the grandparents.

This court in *Borg v. Anderson*, 73 N.D. 95, 11 N.W.2d 121 (1943), determined that custody of an 11-year-old girl should remain with her maternal grandmother. When the child was six months old her mother turned

her over to the maternal grandmother stating, "I give Beverly to you." The grandmother raised the child from that day forward until the child's father brought an action for custody at the time the child was 11 years old. Prior to the father's custody action, the child's mother died of tuberculosis in New Mexico.

During the custody proceeding the child expressed a desire to remain with her grandmother and grandfather.[2] This court determined that it was in the best interests of the child to remain in the custody of her grandmother, and in its written opinion the court stated, in part:

". . . This is the only home that she has known. . . .

". . . If the child is left in her present home there seems little likelihood that she would lack care, comfort or a normal education. Her moral surroundings are of the best. She is entering upon the age of adolescence. At least some emotional shock will of necessity result from disrupting the normal life to which she has become accustomed and severing her connections with the people for whom she has developed deep affection. We have reached the conclusion that the welfare of the child requires that she be permitted to remain in the custody of [her grandmother]." 73 N.D. at 99–100, 11 N.W.2d at 123.

The *Borg* case demonstrates an exceptional situation in which a child had been voluntarily left in the physical custody of her grandparents for almost 11 years before the child's father sought custody through the courts. To avoid the "emotional shock" to the child of disrupting the normal life to which she was accustomed the court agreed that it was in the best interests of the child to remain with her grandparents in such exceptional circumstances.

**2.** The child's grandmother was 64 years old and in good health at the time the case was decided. However, her grandfather was 71 years old and in poor health.

**3.** Rule 52(a), N.D.R.Civ.P., provides, in part, "If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." We are of

All the foregoing cases demonstrate exceptional circumstances in which it was necessary for the court "in the best interests of the child" to place custody with the grandparents. Each of the foregoing cases has its own unique set of exceptional circumstances supporting such a custody award, but in every instance the children involved were in the actual physical custody of their grandparents prior to the court's custody determination. In the instant case, there are no findings of fact which indicate that such exceptional circumstances are present.

■ Rule 52(a), N.D.R.Civ.P., requires a trial court to "find the facts specially." The purpose of the rule is to enable the appellate court to understand the factual determination made by the trial court as the basis for its conclusions of law and the judgment entered thereon. *DeForest v. DeForest*, 228 N.W.2d 919 (N.D. 1975).

In the instant case the trial court's written findings of fact do not include any finding with respect to the court's custody determination. Counsel for Michael concedes in his appellate brief that "the written Findings of Fact contain no factual basis supporting the Court's decision to award custody to the paternal grandparents."

■ At the close of the hearing the trial court rendered an oral opinion from the bench in which the court provided the following insight into the underlying basis for its custody decision:[3]

"I suppose it is not surprising, both parties are so young, and it is no great pronouncement to say that there is a great deal of immaturity here because, if they were of greater age, immaturity would be something to talk about, but I suppose at the age that they are they have displayed that they are just about

the view that an oral recitation by the court from the bench which is fully recorded is entitled to consideration on appeal, under Rule 52(a), to the extent that it contains findings of fact or conclusions of law by the court. See *DeForest v. DeForest*, 228 N.W.2d 919 (N.D. 1975).

what you would expect them to be. Some people of that age are more responsible than others. I get the picture that neither one of them have been too responsible. I get the picture that both of them need some wearing-in, some time to develop a mature attitude toward life.

. . .

.    .    .    .    .

"She is going to go to school under the CETA Program and learn to become a secretary. While she is doing that she is going to put all her time and efforts towards that; otherwise, she will not make it, and she isn't going to have much to do with. Under the circumstances, I think the matter of custody of the child should be put off for at least one year or at least until the time she has become trained and finds out that she can support her child and in the meantime has indicated that she can live a stable life. I don't think he should have the custody of the child either because he is in a state of flux all of the time and right now he can't drive although he is paying $209 for a vehicle he can't drive. I think the best home for the child right now is with his parents and I will temporarily, for one year, award the custody to the parents.

.    .    .    .    .

"I am leaving the matter of the custody of the child open and placing the child temporarily with the defendant's parents, rather than having the child on welfare with the mother and the mother will be gone, she will not be able to take care of the child anyway while she is training."

From the trial court's oral opinion we can ascertain that it awarded custody of Jessica to her grandparents for one year in order to give Margaret and Michael time to mature. Also, the trial court refused to award custody to Margaret in order to free her from the responsibilities of parenthood so she could direct all her time and efforts toward a secretarial training program. The trial court refused to award custody to Michael because "he is in a state of flux all of the time" and because, in the court's view, Michael needed time to mature.

We have no doubt that the trial court, in awarding temporary custody of Jessica to her grandparents, was making a sincere attempt to help both Margaret and Michael to acquire what, in the court's view, would be a more "stable life." Irrespective of the good intentions with which the court awarded custody to the grandparents, we conclude that the custody determination was clearly erroneous without a sufficient factual basis upon which such a custody disposition could be made.

The trial court did not make any finding of fact demonstrating circumstances that required Jessica, in her best interests, to be taken from both parents and placed in the custody of her grandparents. There are no findings of fact of exceptional circumstances to justify an award of custody to the grandparents in this case.

The trial court expressed concern that Margaret and Michael were immature. However, the court stated that for their ages (Margaret is 19 and Michael is 21), "they are just about what you would expect them to be." Margaret and Michael's youth, and its accompanying immaturity, is not a factual basis upon which to remove custody from them without evidence that their young age or immaturity had manifested itself in ways which were detrimental to Jessica. The record contains no such evidence.

The trial court also expressed its view that to succeed in a secretarial training program Margaret would have to direct all her time and effort toward that program free from the responsibility inherent in having custody of a young child. Notwithstanding the trial court's concern for Margaret in this regard, there are numerous parents throughout this nation who work or attend school, or both, while maintaining custody of one or more children. No one would seriously suggest that the courts could remove custody from all parents falling within such classification. The record in the instant case contains undisputed evidence that when Margaret had custody of Jessica prior to the divorce proceedings she

arranged to have a licensed babysitter take care of Jessica while she was at work. There is no evidence in the record that Jessica failed to receive proper care during this time or that her well-being was in any other way jeopardized.

Because there are no findings of fact of exceptional circumstances to support the trial court's award of custody to the grandparents in this case we conclude that the trial court's custody determination was clearly erroneous and must be set aside. The trial court's custody decision placed custody in the grandparents for a period of one year. We remand with instructions that the trial court promptly hold a new custody hearing to receive evidence and to then make a custody disposition based upon the evidence submitted at that hearing and in accord with the views expressed in this opinion.

We believe that one additional word of instruction is advisable. Under the trial court's original custody determination Jessica's grandparents have had custody of her for the past seven months. This court has stated that the courts should not unnecessarily change custody or bandy a child back and forth. *Bergstrom v. Bergstrom*, 291 N.W.2d 262 (N.D. 1980); *Silseth v. Levang*, 214 N.W.2d 361 (N.D. 1974). Nevertheless, in this case it would be improper for the trial court, in making its forthcoming custody determination, to give consideration to the fact that the grandparents have had and currently have custody of Jessica. It would be improper because the grandparents' custody is the direct result of the court's own order which we have now set aside.

Reversed and remanded with directions for a new hearing.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.