Nancy **GRAVNING**, Plaintiff, Appellant, and Cross-Appellee,

v.

Greg **GRAVNING**, Defendant, Appellee, and Cross-Appellant.

**Civ. No. 11015.**

Supreme Court of North Dakota.

June 19, 1986.

Baer & Asbridge, Bismarck, for plaintiff, appellant, and cross-appellee; argued by Richard B. Baer.

---

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant, appellee, and cross-appellant; argued by Claudette M. Abel.

MESCHKE, Justice.

Nancy and Greg Gravning were married in mid 1982. Two children and two years later they separated. In mid 1985, they were divorced. The divorce judgment placed custody of Gabriel, born December 11, 1982, with Greg and custody of Amanda, born November 5, 1983, with Nancy. Two consecutive days of "joint visitation" were ordered for each month, alternating between Nancy's home in Bismarck and Greg's home at Hettinger, including visitation with Greg's parents.

The divorce judgment conditioned custody:

"That the custody of the minor child, Amanda Gravning, by the Plaintiff is expressly conditioned upon the Plaintiff actively pursuing her formal education and/or gainful employment.

\* \* \* \* \* \*

"That the custody of the minor child, Gabriel Gravning, by the Defendant is expressly conditioned upon the Defendant refraining from any use of any controlled substances including alcohol, the Defendant's remaining gainfully employed and the Defendant continuing to maintain his residence with his parents, Terry and Myrna Gravning."

Nancy contends that she should be awarded custody of both children and that the trial court "made a definite mistake in separating the children." Nancy also challenges the "financial conditions on continued custody of Amanda with her" and complains that the division of property was inequitable. Greg contends that he should be awarded custody of both children and also challenges the conditions on his custody of Gabriel.

The choice between parents is rarely easy for "neither the trial court nor this court has the wisdom of Solomon." *Landsberger v. Landsberger,* 364 N.W.2d 918, 920 (N.D.1985). The guiding standard is "the best interests and welfare of the child," § 14–09–06.1, N.D.C.C., which must "be determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child" as enumerated in § 14–09–06.2, N.D.C.C.

Recognizing that the "tender years" doctrine is no longer valid, see *Odegard v. Odegard,* 259 N.W.2d 484 (N.D.1977), Nancy asserts that the trial court overlooked her role as "primary caretaker" and abused its discretion in separating the children without articulating sufficient reasons. While the trial court's findings are not elaborate, its oral findings cover as many pages in the transcript as Nancy's entire appellate brief contains. And, we conclude that the appellate arguments advanced do not effectively counter the trial court's reasoning.

Some courts have made the "primary caretaker" factor into a presumptive rule, see *Pikula v. Pikula,* 374 N.W.2d 705 (Minn.1985), but in North Dakota the concept inheres in the statutory factors and has not yet been accorded elevated status. "[T]he observed fact that mothers of infants are most often better able to care for them than the fathers are ... is only one of the many considerations to be weighed by the trial court in making its finding as to the best interest of the child, and to be considered by us in determining whether the finding was clearly erroneous." *Odegard v. Odegard,* 259 N.W.2d at 486.

In North Dakota, parents "have equal rights" as to the "care, custody, education, and control" of their minor children; § 14–09–06, N.D.C.C. (1985 Supp.). "Between the mother and father ... there is no presumption as to who will better promote the best interests and welfare of the child;" § 14–09–06.1, N.D.C.C.

While courts are cautious about dividing custody of children, see Annot., 98 A.L. R.2d 926, *Comment Note.—Propriety of separating children by awarding custody to different parents* (1964), this court has approved it for small children where the trial court has found it desirable; *Henry v. Henry,* 77 N.D. 845, 46 N.W.2d 701 (1950).

This court has even required it where the record revealed seriously uneven treatment of one of two children by the initial custodial parent; *Willi v. Willi*, 335 N.W.2d 790 (N.D.1983).

█ Here, the trial court was concerned about a lack of cooperation in visitation, while both children were in Nancy's custody during the year of separation. And, the trial court was sensitive to the needs of the children:

"I would encourage the parties if indeed you can find a measure of common ground and a measure of mature relationship to benefit your children, to expend these visitations so that these children know each other. That[s] the purpose of the joint visitation—. I don't wish to see a further situation where there is animosity that has built up or the ill will that is present is again being shown and if indeed that is what the joint visitation turns out to be, I will terminate it. So, I hope I make myself clear. I don't wish to control your lives unnecessarily, but these young children are entitled to have a fair and honest relationship and it is the obligation of the Court to do what I can to give them the best opportunity."

This court has warned that "one's failure to permit reasonable visitation could be a very significant factor in the court's ultimate disposition" of custody; *Lapp v. Lapp*, 293 N.W.2d 121, 131 (N.D.1980). Other courts have approved divided custody to address visitation problems where one parent had initial custody. 98 A.L. R.2d, *supra*, at 944. Here, the provisions for continuous "joint visitation" and for periodic review of the arrangements by the court with the parties point up the carefulness of the trial court's disposition. We conclude that divided custody was an appropriate "Solomonic"[1] approach to the circumstances that the trial court encountered in this case.

█ Nancy and Greg directed much of their efforts on this appeal, as they did at trial, to try to show that each would be a better parent than the other. But, the trial court carefully considered the evidence and found that "each of Nancy Gravning and Greg Gravning are competent and capable parents and that each shall have equal standing in the eyes of the law." The findings are supported by evidence and are not clearly erroneous. Rule 52(a), N.D.R. Civ.P.; *Landsberger v. Landsberger, supra*. We see no error in the trial court's separate placement of these children.

The troublesome issues on this appeal are the conditions imposed on the award of custody to each parent. Both appellants complain about their individual conditions, but neither questions the appropriateness of imposing any conditions. Thus, our examination of the issues is limited by the lack of adversarial presentations on them.

█ The use of conditions for continuing custody may be an additional way to insure that divorced parents fulfill their obligations to their children.[2] But, the critical concern must be whether the effect of conditioning custody risks making the child the innocent victim of a parent's misbehavior. Behavioral conditions directed to the conduct of the parents, like those used here, carry such a risk, particularly where the failure to live up to the condition does not clearly and directly affect the child's welfare. Whether that risk is acceptable, when weighed with the utility of promoting compliance with the custodial decree, can probably be determined better with experience. Therefore, we leave full resolution of that issue to another day, while making several observations about the subject.

---

1. Chief Justice Erickstad so characterized the "split" custody of a single child for six months out of each year to each parent in *Lapp v. Lapp*, 293 N.W.2d at 130. That characterization is equally apt when custody of two children is divided between the parents.

2. "Indeed, the belief among courts is growing that the conditioning of remedies is 'one of the better means available' to deter recalcitrant parental behavior and to coerce compliance with postdivorce obligations." Comment, *Making Parents Behave: The Conditioning of Child Support and Visitation Rights*, 84 Colum.L.Rev. 1059, 1062 (1984).

■ First, every placement of custody carries implicit behavioral conditions. Any conduct of a parent which adversely affects the welfare of the child is regarded as a sufficient change of circumstances to warrant a change of custody. *E.g., Vetter v. Vetter*, 267 N.W.2d 790 (N.D.1978); *Jordana v. Corley*, 220 N.W.2d 515 (N.D.1974); *Goff v. Goff*, 211 N.W.2d 850 (N.D.1973). Therefore, we do not believe that every expressed condition can be condemned.

Second, these conditions are connected to the background and circumstances of these parents. Appellants' complaints about them do not show that they are wholly unrelated to the well-being of the child placed with that parent. A complete lack of relationship to the welfare of the child would no doubt make a condition of custody unreasonable and an abuse of discretion. We are unable to view these conditions as that disconnected to the interests of these children.

Finally, it may be better to consider the advantages and drawbacks of a particular condition when, and if, a trial court has determined that a breach of the expressed condition has taken place and has assessed the impact of the breach on the child involved.

The trial court gave sufficient reasons for the division made of the modest property of the parties.

Since error has not been demonstrated, we affirm.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, dissenting.

I agree that in custody disputes the "choice between parents is rarely easy for 'neither the trial court nor this court have the wisdom of Solomon.'" However, for this court to exercise whatever wisdom it may possess, it needs adequate factual findings by the trial court to determine whether the custody decision is clearly erroneous. *Hust v. Hust*, 295 N.W.2d 316 (N.D.1980); *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975). Adequate articulation of the trial court's findings provides the rationale for its decision and is essential for intelligent judicial review. *Minot Daily News v. Holum*, 380 N.W.2d 347 (N.D.1986).

In both its oral opinion and written findings, the trial court explained that it considered both Nancy and Greg equally fit to have custody of their children, but that the individual needs of each child would be best fulfilled by splitting custody. This, however, was the extent of the trial court's "rationale" for splitting custody. For me, it raises more questions than answers, and, in effect, begs the child custody question.

Because splitting custody of young children is problematic, *See generally* Annot., 98 A.L.R.2d 926, I believe that when it is ordered, the trial court's findings and conclusions should explicitly, and in a particularized fashion, explain and justify why splitting custody is in the children's best interests. *Cf. Hust v. Hust, supra.* While I acknowledge that awarding custody of children is the most difficult of judicial decisions, and have no doubt of the trial court's sincere effort to promote the children's welfare, under these circumstances, its findings of fact are simply insufficient to support its decision. I would not, therefore, affirm the trial court judgment.

Instead, I believe we should adopt the rule that when equally fit parents seek custody of children too young to express a preference, and one parent has been the primary caretaker of the children,[1] custody

---

1. The primary caretaker is the parent who provides the child with daily nurturance, care and support. *Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985). For example, the following have been held to be indicia of primary caretaker status: (1) preparing and planning meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning and care of clothing; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers; (6) arranging alternative care, i.e., babysitting, day-care; (7) putting child to bed at night, waking child in the morning; (8) disciplining child, i.e., teaching general manners and toilet training; (9) educating, i.e., religious, cultural, social, etc.; (10) teaching elementary

should be awarded to the primary caretaker. *See Pikula v. Pikula,* 374 N.W.2d 705 (Minn.1985); *Garska v. McCoy,* 278 S.E.2d 357 (W.Va.1981); *see also In Re Maxwell,* 8 Ohio App.3d 302, 456 N.E.2d 1218 (1982); *Van Dyke v. Van Dyke,* 48 Or.App. 965, 618 P.2d 465 (1980); *Com. Ex. Rel. Jordon v. Jordon,* 302 Pa.Super. 421, 448 A.2d 1113 (1982); *see generally* Chambers, *Rethinking the Substantive Rules for Custody Disputes in Divorce,* 83 Mich.L. Rev. 477 (1984). I believe that the benefits of the primary caretaker rule far outweigh any baggage.

First, it will generally be in the child's best interest to be in the primary caretaker's custody. The intimate interaction of the primary caretaker with the child creates a vital bonding between parent and child. *See Pikula, supra; see generally* Chambers, *supra;* Klaff, *The Tender Years Doctrine: A Defense,* 70 Cal.L.Rev. 335, 344–347 (1982). Preserving this bond is in the child's best interest and thus argues strongly in favor of awarding custody to the primary caretaker. *Pikula, supra.*

Second, continuity of care with the primary caretaker is the most objective, and perhaps the only predictor of a child's welfare about which there is agreement and which can be competently evaluated by judges. *See Pikula, supra; see generally* Mnookin, *Child-Custody Adjudication: Judicial Functions in the Face of Indeterminacy,* 39 Law & Contemp.Probs., Summer 1975, at 226. Adopting the primary caretaker rule will inject a measure of needed certainty into custody disputes. *Pikula, supra; Garska v. McCoy, supra.*

Third, the primary caretaker rule will benefit the negotiation process between divorcing parents. By virtue of the caretaking function, the primary caretaker is likely to be closest to the child, and thus general-

ly will be substantially more distressed by the loss of custody than the other parent. *Garska v. McCoy, supra.* Consequently, because primary caretakers have the most at stake in custody disputes, they are likely to make the most concessions regarding alimony, support and property matters, especially when the other parent uses the issue of custody as a coercive bargaining weapon. The primary caretaker rule will strengthen and protect the primary caretaker's out-of-court bargaining position. *Pikula, supra; Garska v. McCoy, supra; see generally,* Mnookin & Kornhauser, *Bargaining in the Shadow of the Law: The Case of Divorce,* 88 Yale L.J. 950 (1979).

Finally, on its face, at least, the primary caretaker rule is gender neutral; it may benefit either parent.[2] *Pikula, supra; Garska v. McCoy, supra.* In this regard the primary caretaker rule does not run afoul of either NDCC § 14–09–06 or § 14–09–06.1 because it does not presume either the mother or father to be the best custodian.

Under the facts of this case, where the trial court found both Nancy and Greg to be equally fit custodians of children too young to express a preference, custody of both children should be awarded to Nancy, who was undisputedly their primary caretaker.

Another reason for my dissent is my interpretation of the majority view as condoning the trial court's decision to split custody either to punish Nancy for her lack of cooperation in visitation while she had custody during the separation or to ensure future cooperation. I do not agree with either proposition. The weight of authority is that a custody award should not be used to punish a parent for bad behavior. *Rosenberg v. Rosenberg,* —— Pa.Super.

---

skills, i.e., reading, writing and arithmetic. *Garska v. McCoy,* 278 S.E.2d 357, 363 (W.Va. 1981); *see also* Chambers, *Rethinking the Substantive Rules for Custody Disputes in Divorce,* 83 Mich.L.Rev. 477, 538 n. 230 (1984).

**2.** Thus, the primary caretaker rule is distinguishable from the tender years doctrine because the father may be the primary caretaker. *See Pikula, supra* at 711 n. 2.

——, 504 A.2d 350 (1986); *see also Houde v. Beckmeyer,* 116 N.H. 719, 366 A.2d 504 (1976); *Verity v. Verity,* 107 A.D.2d 1082, 486 N.Y.S.2d 505 (1985); *Gunther v. Gunther,* 478 S.W.2d 821 (Ct.Civ.App.Tex.1972); *Rowlee v. Rowlee,* 211 Va. 689, 179 S.E.2d 461 (1971). The normal means of enforcing a visitation order is by contempt proceedings, *Rosenberg, supra,* or by modification proceedings. *See Lapp v. Lapp,* 293 N.W.2d 121 (N.D.1980).

I would reverse and modify the judgment to award custody of both children to Nancy.