Alana (Burchill) LUDWIG,
Plaintiff and Appellee,

v.

Allen BURCHILL, Defendant
and Appellant.

Civ. No. 930270.

Supreme Court of North Dakota.

March 30, 1994.

Carol Susag Nelson, Valley City, for defendant and appellant.

Leslie Deborah Johnson, Fargo, for plaintiff and appellee.

LEVINE, Justice.

Allen Burchill appeals from an amended judgment awarding custody of his son to the child's mother, Alana Ludwig. We affirm.

Burchill and Ludwig were married June 30, 1984 and divorced May 24, 1989. They had one child during the marriage. The original divorce judgment awarded custody of the child to Burchill during the school year and to Ludwig during the summer. In 1990, Ludwig moved for a change of custody. The trial court denied her motion and we affirmed in *Ludwig v. Burchill*, 481 N.W.2d 464 (N.D.1992). In 1993, Ludwig again moved for a change of custody. The trial court granted her motion, awarding custody to Ludwig during the school year and to Burchill during the summer. Burchill appealed.

Burchill first argues that the trial court erred in modifying custody because there were no changes in circumstances that so adversely affected the child to require a change in custody to foster the child's best interests. Particularly, Burchill argues that there was no evidence that his second DUI conviction and his continued drinking adversely affected the child.

■ We treat a trial court's custody determinations as findings of fact and review them under a clearly erroneous standard. NDRCivP 52(a); *e.g., Foreng v. Foreng*, 509 N.W.2d 38 (N.D.1993) [original custody determination]; *Johnson v. Schlotman*, 502 N.W.2d 831 (N.D.1993) [modification of custody]. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, has a definite and firm conviction that the trial court made a mistake. *E.g., Johnson v. Schlotman, supra.*

■ In a change of custody determination, the trial court first must determine whether a significant change of circumstances has occurred since the prior custody decree, and if so, whether that change so adversely affects the child that it compels or requires a change in custody to foster the child's best interests. *E.g., Hagel v. Hagel*, 512 N.W.2d 465 (N.D.1994); *Johnson v. Schlotman, supra* at 834; *Delzer v. Winn*, 491 N.W.2d 741, 743–44 (N.D.1992); *Blotske v. Leidholm*, 487 N.W.2d 607, 609 (N.D.1992).

■ We believe that evidence exists that the change of circumstances in this case so adversely affected the child that it required a change in custody to foster the child's best interests. The trial court did not make an express finding that the change of circumstances in this case adversely affected the child. However, we may infer from the findings it did make that the trial court determined that the child was affected adversely by the change in circumstances. *Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D.1989). In the original judgment, which awarded primary custody to Burchill, the trial court found that Burchill was better able to provide "a good home and the attention and care that a young boy so badly needs," whereas Ludwig's future was "very uncertain." The trial court also noted that "[b]oth of the parties have had a problem with alcohol."

The trial court denied Ludwig's 1990 change of custody motion, opting in favor of maintaining the stability of Burchill's relationship with the child. We elaborated the circumstances underlying the trial court's resolution of Ludwig's first motion in our previous opinion. *See Ludwig v. Burchill, supra* at 466–69. Of particular importance to this appeal is the trial court's emphasis at the time of the first motion on two conditions: that Burchill would switch the hours of his job from the night shift to the day shift and Burchill would "attend Alcoholics Anonymous at least twice per month and . . . secure a sponsor." The trial court was sensitive to Burchill's alcohol abuse and DUI conviction, and to the effect of Burchill's night-shift

hours on the child's day-to-day care and schedule; however, it reasoned that Burchill was in a transitional period and had plans to stabilize his life. It was to allay these concerns that the trial court ordered Burchill to attend AA and assumed that Burchill would adjust his work schedule to allow a more stable and consistent relationship with his child. *See Gravning v. Gravning,* 389 N.W.2d 621, 623–24 (N.D.1986) [approving of trial court's conditional custody award on basis that conditions were "connected to the background and circumstances of these parents" and "[ ]related to the well-being of the child"].

At the time of Ludwig's second change of custody motion, however, both the trial court's expectations and Burchill's good intentions had failed to materialize. Burchill had not attended AA except on four occasions in 1991. He continued to drink and was convicted of a second DUI charge. He continued to work the night shift at his job, which would result in the child's spending every night but four each month at Burchill's parents' home. The trial court found that Burchill had changed from "a lead actor to a supporting role" in his parenting responsibilities. Burchill's second DUI conviction was particularly significant to the trial court, as it "sent a key message ... that [Burchill] opted

to continue to drink alcohol and risk losing custody." The trial court was persuaded by expert testimony that Burchill's second DUI conviction was "a 'hard indicator' of alcohol dependence and that such dependence has a negative effect on parenting skills," particularly Burchill's ability to provide transportation while his license was suspended and the further-reaching effect on the child of growing up with an alcohol-dependent parent. The trial court found that Ludwig, on the other hand, had successfully stabilized her life and had "a pivotal lead" over Burchill in moral fitness and mental and physical health.

In effect, the trial court found that Burchill's failure to attend AA as ordered by the trial court, his continued drinking and second DUI conviction, his failure to change his work schedule, and his abdication of his parenting responsibilities to his parents, juxtaposed against Ludwig's newly stabilized life, constituted a significant change of circumstances that required a change in custody. There is evidence to support the trial court's determination that this change, particularly Burchill's second DUI conviction and continued drinking, so adversely affected the child that it required a change in custody to foster the child's best interests, and we are not left with a definite and firm conviction that the trial court made a mistake.[1]

---

1. While the dissent's analysis of the law may be beyond reproach, its application of that law is unacceptable because it is rife with de novo factfinding. Were we the factfinders, we may well have picked and chosen the same facts to rely upon as the dissent has, without deferring to the trial court's express or implied findings. But then, we also might have relied on Dr. Neil Clark's testimony about his concerns stemming from Burchill's continued use of alcohol:

"[T]he consequences have been considerable in the sense that, you know, the cost associated with DUIs and the suspension of license as well as the complications that Mr. Buchill is dealing with in his custody matters. The typical thing would be to recognize that alcohol creates problems that are both expensive and having ramifications that affect many areas of one's life.

.    .    .    .    .

"And that continuing pattern of drinking could result in further problems, especially in the DUI context.

.    .    .    .    .

"[I]t is well known that the alcohol disease [is] progressive generally with continued use of the

substance. So obviously the best course of action for an individual that's dealing with those kinds of symptoms and those kinds of issues would be to engage in abstinence and participate in whatever kind of supports that would be helpful in helping them to maintain a program of abstinence. That's the only surefire approach to not have progression in the disorder and further complications in terms of impacts on their life or lifestyle.

.    .    .    .    .

"Mr. Burchill did report that he did not feel comfortable attending those AA meetings, so I guess, you know, the thing that would concern me is what is the alternative course of support for maintaining a program of abstinence. At this point in time in my knowledge, AA is the best known method of doing that, including hospital and outpatient treatment programs. What I'm saying is it's the only known method that has a substantial success rate."

Or we might have relied on other parts of James Monson's testimony, which the dissent leaves out:

"I think [Burchill] had one or two beers during the outpatient program. That was

■ Burchill also challenges several findings of fact, essentially on two grounds. First, he argues that the trial court erred in its weighing of the evidence. But it is up to the factfinder, not us, to weigh conflicting evidence. The mere fact that we might have viewed the evidence differently does not entitle us to reverse the trial court. *Reede v. Steen,* 461 N.W.2d 438, 440 (N.D.1990). Second, he complains of misstatements in the memorandum opinion. But these errors were corrected in the trial court's order for second amended judgment and are not, in our opinion, substantive. We conclude that the trial court's findings are not clearly erroneous.

■ Finally, Burchill argues that the trial court erred by denying his motion for appointment of a guardian ad litem. He asserts that NDCC § 14–09–06.4 requires the trial court to grant such a motion. We disagree. Section 14–09–06.4 provides:

"In any action for an annulment, divorce, legal separation, or other action affecting marriage, where either party has reason for special concern as to the future of the minor children, and in actions affecting the marriage relationship where the custody of such children is contested, either party to the action may petition the court for the appointment of a guardian ad litem to represent the children concerning custody, support, and visitation. The court, in its discretion, may appoint a guardian ad litem on its own motion. If appointed, a guardian ad litem shall serve as an advocate of the children's best interests. The court may direct either or both parties to pay the guardian ad litem fee established by the court. If neither of the parties are able to pay the fee, the court may direct the fee to be paid, in whole or in part, by the county of venue. The court may direct either or both parties to reimburse the county, in whole or in part, for such payment."

We do not read the language of section 14–09–06.4 as removing the appointment of a guardian ad litem upon a party's motion from the trial court's discretion. *See Healy v. Healy,* 397 N.W.2d 71, 75 (N.D.1986) [holding that a trial court may appoint a guardian ad litem on its own initiative at its discretion]. Here, the trial court denied Burchill's motion because it was "satisfied that it [could] consider the best interests of the child involved without the appointment of a guardian ad litem." The trial court had presided over and decided the first motion for modification after appointing a guardian ad litem and obviously was familiar with the background of the case and the circumstances of the family provided in the prior report of the guardian ad litem. We conclude the trial

---

against treatment expectations. Didn't really get involved in AA, didn't feel comfortable there, although that's not that uncommon, continued to drink, got another DUI, the last one, I believe, which was in June of '92, and has continued to drink even after the DUI and knowing that his wife was going to make it an issue, should he continue to drink. And he's continued to drink.

"So that to me is all demonstrative of a fairly high level of denial. If he was concerned about not losing his child and not continuing to have troubles related to drinking and he didn't have a problem with drinking, then I doubt that he would continue to drink.

   .    .    .    .    .

"My recommendation [for Burchill] is that he not drink and look into trying AA again. I'm not recommending treatment right now because his drinking pattern isn't serious enough to warrant a full outpatient or inpatient program. But just because his drinking isn't currently out of control doesn't rule out the presence of alcoholism. That's why I concurred with the diagnosis of alcohol depen-

dence that was made earlier by Will Brink. He shouldn't really be drinking.

   .    .    .    .    .

"Before a person will have a period of out of control drinking as [Burchill] did prior to his drinking and during the problems with his marriage he was having, which he talked about freely with me, and then go into a period of ... what appears to be managed drinking, and then later on if there's another cris[i]s or something happens, you know, he could easily find himself in another period of out of control drinking. So yes, that's [increasing number of family- and employment-related problems] very likely if he continues to drink."

Our role as an appellate court does not include factfinding. Our standard of review requires us to leave that to the trial court. *See* NDRCivP 52(a) ["Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."] The trial court may pick and choose among the evidence; however, we may not.

court did not decide Burchill's motion in an arbitrary, unreasonable, or unconscionable way, *see Swanston v. Swanston,* 502 N.W.2d 506, 509 (N.D.1993), and, thus, did not abuse its discretion.

Affirmed.

VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur.

MESCHKE, Justice, dissenting.

I respectfully dissent. In my opinion, the trial court misunderstood the two-stage decisional process for changing a child's custody, mistakenly applied the law of behavioral conditions for custody, and failed to make the essential finding of necessity to change custody. On the entire evidence, I am firmly convinced that the trial court was mistaken in changing custody.

Although the opinion by Justice Levine recognizes the two-stage analysis for modifying an existing custody placement, which differs from an original custody decision, the trial court did not. The trial court expressly found "that there has been a significant change of circumstances since the 1991 Amended Judgment," but the court did not say what the change was. The trial court simply "finds that the significant change of circumstances is such that a change in physical custody will serve the best interests of the child." That is the wrong standard for changing custody.

The trial court failed to identify the crucial concern in changing custody. Justice Levine stressed this aspect in her concurrence in *Ludwig I:*

> [T]o change custody, there must be a significant change of circumstances that *requires* the change.... In order to *require* or *necessitate* a custody transfer, the significant change of circumstances must weigh against the best interests of the child....
>
> [T]he language used in some of our cases and cited by the majority, that we analyze whether a change in custody will "serve" or "foster" the best interests of the child, is misleading and inaccurate.... Whether the change of circumstances *requires* that there be a change of custody must be

answered in the context of the recognized overriding benefit in maintaining the stability and continuity of the custodial parent-child relationship and not by looking at the particular change and whether it will "foster" the best interests of the child.

*Ludwig v. Burchill (Ludwig I),* 481 N.W.2d 464, 469–70 (N.D.1992) (Levine, Justice, concurring) (last three emphases added). Since only this writer signed that additional opinion by Justice Levine, I believe that the trial court misunderstood it, and was misled into using only the "best interests" analysis inaccurately recited by the majority opinion in *Ludwig I.*

The two-stage analysis is not a recent refinement in child custody doctrine. *See Miller v. Miller,* 305 N.W.2d 666 (N.D.1981); *Orke v. Olson,* 411 N.W.2d 97 (N.D.1987). In addition, the current court has unanimously endorsed the view that "the second decisional stage [for change of custody] is whether the change in circumstances so adversely affects the child that it *compels* or *requires* a change in custody in order to foster the child's best interests." *Hagel v. Hagel,* 512 N.W.2d 465, 467 (N.D.1994), citing *Johnson v. Schlotman,* 502 N.W.2d 831, 834 (N.D.1993) and other precedents. In my opinion, this change of custody should be reversed to reinforce the doctrinal teaching on changing custody, as well as to correct the mistaken application of law here.

Justice Levine's opinion acknowledges that "[t]he trial court did not make an express finding that the change of circumstances in this case adversely affected the child." Justice Levine would excuse this omission by implying that the trial court determined that the child was so adversely affected that change of custody was necessary. However, to give a large measure of finality to an initial custody placement, and thus to preserve a child's stable relationship with a fit custodial parent, we require an express finding of the necessity for the change. *Anderson v. Anderson,* 448 N.W.2d 181, 182 (N.D.1989). In *Anderson,* the trial court removed an eight year old child from her mother, who had "a longstanding problem of alcohol abuse" and who left the child with the non-custodial father during one period of

treatment at Heartview Foundation. We reversed the transfer of custody because the trial court "focused solely upon a determination of whether it would be in [the child's] best interest to reside with her father or mother, without first considering whether there had been a significant change of circumstances since the original decree to [necessitate] a change of custody." *Id.*

In her opinion, Justice Levine does not describe how Justin was "adversely affected," nor did the trial court. Rather, Justice Levine predicts, from the generalized idea that "alcohol dependence ... has a negative effect on parenting skills," that Justin might be affected by "the further-reaching effect ... of growing up with an alcohol-dependent parent." However, this record does not reflect any existing adverse effect on Justin during his four years in Burchill's custody. Indeed, the trial court found:

> Though still having some behavior problems in school, Justin seems to have adjusted fairly well to being the child of a broken home.

And:

> Ms. Morris [Justin's teacher] believed that Justin now fits into the "normal" category of first graders.

There was no finding of harm to Justin.

Rather than focusing on how Justin fared with his father for four years, the trial court faulted Burchill's lifestyle itself. The court concluded Burchill "has more negatives this time around," although adding that it "still wants the parties to know that it thinks they are still basically good people." Those conclusions came after findings faulting Burchill for his second DUI and following license suspension, while recognizing that transportation had been adequately provided for Justin by Burchill's parents (who lived with them temporarily while building a new home nearby), and that Burchill's license would be reinstated soon. The court attacked Burchill's choice "to remain on the night shift [for his job at WalMart] as he thinks it provides more job security," since then "Justin sleeps at his grandparent's house" nearby. The court condemned Burchill's job choice, saying his "priority is shift preference over a less-nomadic lifestyle for his son," without recog-

nition that the night job allowed Burchill the most possible daytime hours with his son. Thus, the trial court faulted Burchill's work ethic and his closeness to his extended family, even though those qualities are usually considered exemplary in a single parent's life. *See also* NDCC 14–09–06.1 (grandparental rights). The trial court reasoned:

> When one considers [Burchill's] work schedule, Justin's school schedule, the fact the grandparents provide transportation, etc., the focus on whom is providing the environment is on the grandparents. The fact they have a new home is commendable. The fact that they are the primary care givers of Justin is also commendable. However, this custody contest is not between the grandparents and [Ludwig]. It is between the parties and it seems that [Burchill] has transferred from being the lead actor to a supporting role.

Missing from this reasoning is evaluation of the evidence about how Justin has gotten along in the four years with his father.

The trial court stressed that, although Burchill had been ordered in the 1991 decree denying change of custody to "attend Alcoholics Anonymous at least twice per month and [to] secure a sponsor," Burchill had quit attending A.A. in the fall of 1991. The trial court reasoned:

> He based his disobedience of the Court's Judgment on the fact that an addiction counselor, Kerry Wicks, had told him he need not attend A.A. [Burchill] has failed to cite any authority which provides that a counselor may act as an appellate court and review the order of a trial court. This Court is not impressed.

Omitted is the fact that custody was not explicitly, but only implicitly, conditioned on this order. The court went on:

> [Burchill] opted to continue to drink alcohol and risk losing custody of his son. Not a wise choice.

The psychologist, Dr. Neil Clark, testified that a second DUI conviction is a "hard indicator" of alcohol dependence. He believed that such dependency had a negative effect on parenting skills such as driving with the child and the known difficulty

that children have growing up in alcohol dependent homes.

The court did not find that Justin was having difficulty at home.

The court also compared Burchill's conduct with Ludwig's, who also testified that she drank, usually "between three and four" beers, "[o]nce, twice a month."

> A change on behalf of [Ludwig] is that she and her husband have discontinued hosting any alcoholic parties that the Court was concerned with in 1991.

> In 1991, [Ludwig] had a slight edge when it came to these two factors. That edge has widened into a pivotal lead.

Missing, again, is any evaluation of how Justin fared in his father's custody for four years.

Justice Levine relies on *Gravning v. Gravning*, 389 N.W.2d 621, 623–24 (N.D. 1986), to justify the trial court's change of custody for breach of behavioral conditions. But *Gravning* was an original custody placement, not a change in custody. In *Gravning*, both parents appealed and complained about the separate custody of each of two children being "expressly conditioned" on certain behavior by each parent. The express conditions required the mother to get "formal education and/or gainful employment," and required the father to abstain from "controlled substances including alcohol," get gainful employment, *and* continue to reside with his parents. *Gravning*, 389 N.W.2d at 622. While we affirmed, we cautioned:

> [T]he critical concern must be whether the effect of conditioning custody risks making the child the innocent victim of a parent's misbehavior. Behavioral conditions directed to the conduct of the parents, like those used here, carry such a risk, particularly where the failure to live up to the condition does not clearly and directly affect the child's welfare. Whether that risk is acceptable, when weighed with the utility of promoting compliance with the custodial decree, can probably be determined better with experience. Therefore, we leave full resolution of that issue to another day, while making several observations about the subject.

*Gravning*, 389 N.W.2d at 623. In our observations, we stressed:

> [I]t may be better to consider the advantages and drawbacks of a particular condition when, and if, a trial court has determined that a breach of the expressed condition has taken place and has assessed the impact of the breach on the child involved.

*Id.* at 624. An assessment of the impact of Burchill's breach of the order on the child is missing here, both in the evidence and in the findings. In spite of the *Gravning* concerns, the trial court's findings and Justice Levine's opinion have not "assessed the impact of [Burchill's] breach on the child involved," Justin, nor have they analyzed whether "the failure to live up to the condition [has] clearly and directly affect[ed] the child's welfare."

Both the trial court and Justice Levine express fear about the future of a child growing up with an alcohol-dependent person, but neither identify any present impact on Justin. This might be a satisfactory analysis for initial placement of custody, but it is an unsatisfactory analysis for a change of custody based on a breach of condition, where it is essential to identify the present adverse effects on the child that would compel the change.

The evidence does not include any expert opinion about an existing effect on Justin. James Monson, a chemical dependency counselor for Ludwig, diagnosed Burchill with "alcohol dependence mild," but did not evaluate Justin. Monson testified: "I'm not recommending treatment right now because his drinking pattern isn't serious enough to warrant a full outpatient or inpatient program." When asked, "[d]oes [being an alcoholic] affect your relationship with your children?", Monson answered: "Well, it certainly can, but I believe my testimony is just to my evaluation, isn't it? ... I'm not real comfortable answering that question. My role here is to substantiate my diagnosis, not to make a determination as to his fitness as a parent."

Dr. Neil Clark, a licensed psychologist for Ludwig, also evaluated only Burchill. Dr. Clark used Monson's chemical dependency assessment because "he has a lot more depth and breadth of experience in that particular problem presentation." Dr. Clark testified

that Burchill "does report … continuing to drink periodically, I believe two to three times a month, in which he will have two to three beers. And that continuing pattern of drinking could result in further problems, especially in the DUI context." Dr. Clark opined that alcoholism

> certainly can affect one's parenting skills. You know, the first concern is, of course, whether or not there's any transportation of the child while drinking which is a safety concern. Other impacts depend upon the severity of the degree of alcohol abuse or dependence.

This is a generalization, not an evaluation of the effect on Justin. In *Weber v. Weber*, 512 N.W.2d 723, 727 (N.D.1994), we recently rejected similar generalizations as inappropriate criteria for deciding child custody. "[I]n the absence of a complete study of all of the parties, there is logical frailty in applying a general premise to a specific case."

Kerry Wicks, a licensed addiction counselor for Burchill, testified that his evaluation of Burchill "didn't find enough evidence to warrant an addiction diagnosis." Wicks added:

> I didn't find enough evidence to warrant an addiction diagnosis. I did comment that his drinking and driving is obviously a use of poor judgment and that his drinking is starting to cause him some problems and I recommended that he attend 20 hours of alcohol education, but there was no—no actual DSM–III–R diagnosis.

While the trial court faulted Burchill for failing to attend A.A., the court did not find that Burchill was an alcoholic, nor could it have done so on this record.

More importantly, the trial court could not fairly find from the evidence that Justin had been or was being harmed by Burchill's use of alcohol. Even Justin's mother did not testify that Justin was not doing well with Burchill. Her strongest criticism was that "[h]e's being raised by his grandparents," without identifying any particular shortcomings. The trial court was indignant about Burchill's behavior, but failed to determine whether his behavior adversely affected Justin. Burchill is not a perfect parent; few are. But he is a fit parent who has done a reasonable job of raising Justin.

In *Hagel*, this court unanimously adopted Justice Levine's formulation that, in a modification proceeding, the "child is presumed to be better off with the custodial parent." *Hagel*, 512 at 468, citing *Delzer v. Winn*, 491 N.W.2d 741, 747 (N.D.1992) (Levine, specially concurring). Here, Justice Levine rebuts this presumption with implications that are based on Burchill's behavior instead of any adverse effect his behavior has had on Justin.

Because I believe that the trial court misunderstood the law for change of custody, misapplied the law of behavioral conditions on custody, and mistakenly changed custody of Justin from his fit father, I respectfully dissent.