### In re Richard BUCHHOLZ, a Minor Child.

### Chaveewan BUCHHOLZ, Petitioner and Appellee,

### v.

### Danny BUCHHOLZ and JoAnn Buchholz, Respondents and Appellants.

### Civ. No. 10279.

Supreme Court of North Dakota.

Nov. 17, 1982.

Baird & Senn, Dickinson, for respondents and appellants; argued by Robert B. Baird, Dickinson.

Reichert, Howe, Hardy, Galloway & Jorgensen, P.C., Dickinson, for petitioner and appellee; argued by Gary A. Ficek, Dickinson.

PAULSON, Justice.

Danny Buchholz and JoAnn Buchholz, uncle and aunt of Richard Buchholz, appeal from a judgment of the District Court of Golden Valley County dated August 17, 1982, granting custody of Richard Buchholz to his natural mother, Chaveewan Buchholz. We affirm.

Chaveewan, a native of Thailand, married John Hollyfield on June 3, 1973, at which time John was a member of the United States Air Force stationed in Thailand. Richard was born during the course of this marriage, on March 11, 1974. Chaveewan provided daily care, love, and affection in raising Richard during the course of her marriage to John Hollyfield. In June 1975, Chaveewan, John, and Richard moved to Florida. John and Chaveewan were divorced in Okaloosa County, Florida, on March 6, 1976. Chaveewan retained custody of Richard following the divorce.

On April 30, 1976, Chaveewan married Philip Buchholz. Chaveewan had become acquainted with Philip when he was stationed in Thailand as a member of the United States Air Force. During the course of her marriage to Philip, Chaveewan provided daily care, love, and affection in raising Richard, except for a period of time from June 4, 1977, to December 1, 1977, when she visited her family in Thailand. During this period from June 4 to December 1, 1977, Richard was cared for by Philip's parents, Fred and Eileen Buchholz in Golva, North Dakota.

On April 6, 1978, Philip adopted Richard. Chaveewan and Philip were divorced on June 21, 1978. The divorce judgment was partially based on a prejudgment agreement between Chaveewan and Philip Buchholz. The agreement provided that custody of Richard Buchholz was to be given to Philip, subject to the reasonable visitation rights of Chaveewan. This agreement was entered into because Chaveewan desired to attend night classes to obtain a high school diploma in Florida while she continued to work full time during the day to pay for her education.

Richard remained in Chaveewan's care and custody for five months following the divorce, until November 1978, when Philip received orders to transfer to Okinawa. At that time Philip and Chaveewan agreed to place Richard temporarily in the custody of Fred and Eileen Buchholz in Golva, North Dakota. Fred and Eileen maintained custody of Richard from November 1978 to May 1980. During this period of time, Chaveewan maintained contact with Richard by letters and telephone calls and visited him in Golva for three weeks during the holidays in December 1979 and January 1980.

In April 1980 Philip was transferred to the Philippines. Philip returned to Golva to regain custody of Richard and, following a visit to Chaveewan in Florida in May 1980, Philip and Richard departed for the Philippines. Richard remained with Philip in the Philippines from May 1980 until Philip's death on February 23, 1982. Chaveewan maintained contact with Richard while he was in the Philippines through letters, tapes, and telephone calls.

Following Philip's death, the United States Air Force transported Richard from the Philippines to Golva, North Dakota. He has resided with his grandparents, Fred and Eileen Buchholz, since that time. Because of their ages, Fred and Eileen did not desire custody of Richard. Tom Buchholz, Philip's brother, who was named as Richard's guardian in Philip's will, did not desire custody of Richard either. The Buchholz family decided that another of Philip's brothers, Danny, and his wife JoAnn, should take custody of Richard.

When Chaveewan came to Golva to attend Philip's funeral and to pick up Richard, it became apparent that the Buchholzes did not want to relinquish custody. On March 9, 1982, Danny Buchholz petitioned the County Court of Golden Valley County that he and his wife, JoAnn Buchholz, be appointed guardians and conservators for Richard. The county court subsequently appointed Danny and JoAnn as guardians and conservators of Richard on March 22, 1982. Following the appointment of Danny and JoAnn as guardians and conservators, Chaveewan, on March 23, 1982, applied to the District Court of Golden Valley County for a writ of habeas corpus. The district court executed the writ and ordered Danny to bring Richard before the court on March 25, 1982. The parties moved for a continuance so that an evidentiary hearing could be held.

The evidentiary hearing was held on March 30 and 31, 1982. Upon completion of the hearing, the district court ordered home studies performed for Chaveewan Buchholz, Danny and JoAnn Buchholz, and Fred and Eileen Buchholz. Legal custody of Richard was placed with the Golden Valley Social Services and physical custody remained with Fred and Eileen Buchholz pending the final decision of the district court.

After receipt of the home studies report, and following a hearing on the matter on August 6, 1982, the court made its findings of fact, conclusions of law, and order for judgment. The court found it to be in the

best interests of Richard that he be placed in the custody of his natural mother, Chaveewan Buchholz, and judgment was entered accordingly on August 17, 1982. From that judgment Danny and JoAnn appeal. Danny and JoAnn successfully sought and obtained a stay of the judgment of the district court and for that reason Richard has remained in the custody of Fred and Eileen Buchholz pending the outcome of this appeal.

Danny and JoAnn have raised the following two issues on appeal:

(1) Do natural parents have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person as an absolute right?

(2) Did the trial court err in finding that the best interests of Richard are for him to be in the custody of his mother, Chaveewan Buchholz?

▪ This case is before us on appeal from a judgment entered in a habeas corpus proceeding. Although it may have been more appropriate and a better procedure for Chaveewan to seek custody of Richard by attempting to amend the divorce judgment alleging changed circumstances following Philip's death, because an evidentiary hearing was held to determine the issue of custody, we cannot say that the habeas corpus proceeding was an improper method to use to seek custody in this case. *Mansukhani v. Pailing,* 300 N.W.2d 847 (N.D. 1980), *cert. den.,* 454 U.S. 818, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981). However, we reiterate what our court stated in *Mansukhani, supra* 300 N.W.2d at 850, that

"... the objectives and procedures used in a writ of habeas corpus unless substantially modified are unrealistic and [generally] inappropriate for determining the custody of a child especially because of changed circumstances where the best interests of the child are involved."

▪ This court has never stated, and the trial court did not conclude, that natural parents have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person *as an absolute right.*[1] This court has recognized that parents have a right to the custody and companionship of their children superior to that of any other person and that, although such right is not absolute, the courts are reluctant to remove a child from the parents' custody unless it is necessary to prevent serious detriment to the welfare of the child. *Mansukhani v. Pailing,* 318 N.W.2d 748 (N.D.1982); *Hust v. Hust,* 295 N.W.2d 316 (N.D.1980); *In Interest of M.M.C.,* 277 N.W.2d 281 (N.D. 1979).

As Justice Sand stated in *Bjerke v. D.T.,* 248 N.W.2d 808, 813 (N.D.1976):

"Obviously, it is not reason enough to deprive parents of custody that their home is not the best or most modern that could be offered to the child, so long as the child does not suffer physical or moral harm, or lack of food or clothing. Poverty, lack of education or of culture alone are never justification enough for severing the ties that bind families together."

▪ Although Chaveewan does not have an absolute right to the custody of Richard as his natural mother, she should not be deprived of custody unless it is necessary to prevent serious detriment to Richard's welfare. A review of the record does not indicate that any serious detriment to Richard would result by awarding custody to Chaveewan. The record indicates that at all times when Chaveewan had custody of Richard she acted as a loving and caring parent. Furthermore, Chaveewan maintained contact with her son when she did not have custody of him. Chaveewan has a job, money in savings, and a home with ample room for Richard. The conclusion drawn from the home study performed in Florida was that Chaveewan would be an outstanding parent.

1. The trial court stated the following as Conclusion of Law Number II:

"II.

"That natural parents have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person."

■ These are not indications that serious detriment would result to Richard by placing him in the custody of his natural mother. Chaveewan's parental rights were not terminated in the divorce from Philip. The relationship between parent and child continues to exist and so does the public policy of encouraging and fostering such parent-child relationships. *Hust v. Hust, supra* 245 N.W.2d at 319.

Danny and JoAnn contend that the trial court erred in finding that the best interests of Richard are for him to be in the custody of his mother, Chaveewan Buchholz. This finding of the trial court will not be set aside unless it is clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure. Upon review of the record, we are not left with a firm and definite conviction that a mistake has been made in finding that the best interests of Richard are for him to be in the custody of his mother and, therefore, we will not disturb that finding on appeal.

■ Furthermore, it was not necessary for the trial court to determine "the best interests of the child" to award custody in this case. When there is a custody dispute between a natural parent and a third party (the child's aunt and uncle in the instant case), the test is whether or not there are exceptional circumstances which require that, in the best interests of the child, the child be placed in the custody of the third party rather than with his or her biological parent. *Mansukhani v. Pailing*, 318 N.W.2d 748, 751 (N.D.1982). Danny and JoAnn have made no showing of exceptional circumstances which would require that in Richard's best interests he be placed in their custody.

Exceptional circumstances exist when the custody dispute pits the psychological parent against the natural parent. *In Interest of D.R.J.*, 317 N.W.2d 391, 394 (N.D.1982). Danny and JoAnn are not the psychological parents of Richard. Danny and JoAnn have never even had custody of Richard. Richard recognizes Chaveewan as his mother. Because there was no exceptional circumstance shown to trigger the best-interests issue, best interests need not have been determined by the trial court.

Chaveewan contends that Danny and JoAnn should pay for her attorney fees in this action, citing § 28–26–31 of the North Dakota Century Code, because their actions in seeking custody of Richard were not in good faith. In *Westchem Agricultural Chemicals v. Engel*, 300 N.W.2d 856, 859 (N.D.1980), this court discussed an award of attorney fees pursuant to § 28–26–31, N.D. C.C., as follows:

"Generally, attorney fees and expenses are not allowable to the successful litigant in the absence of a statute providing for such an award. Section 28–26–31, N.D.C.C., is the legislature's effort to penalize the litigants who plead false matters or initiate suits without having a basis in law or in fact for doing so and thereby place an undue burden on their opponents. In order to recover expenses and attorney fees, it is necessary to meet the requirements of § 28–26–31, N.D.C.C. The fact that a party interposes an allegation or denial adverse to his opponent does not necessarily mean that the allegation or denial was motivated by bad faith. Although the court may determine that the pleading was made without reasonable cause, the court must nevertheless allow the litigant an opportunity to present evidence in rebuttal and to cross-examine as to the reasonableness of the amounts claimed."

■ There is little doubt but that all of the parties involved in this case truly care about the interests of the minor child involved. Because Danny and JoAnn sincerely believed they were acting in Richard's best interests by seeking custody, we cannot say that their actions were motivated by bad faith and, therefore, Chaveewan is not entitled to attorney fees pursuant to § 28–26–31, N.D.C.C.

In oral argument, Danny and JoAnn expressed concern that they and Fred and Eileen Buchholz would not longer be allowed to visit Richard if Chaveewan was awarded custody. Danny and JoAnn Buchholz and Fred and Eileen Buchholz have

shown love and affection for Richard at all times when Richard stayed with Fred and Eileen in Golva. Chaveewan stated in oral argument that she would have no objection to amending the judgment to specify terms for visitation by Richard's grandparents and aunts and uncles. This is a matter which the parties may wish to work out and include in an amended judgment.

For the reasons stated in this opinion, the judgment of the district court is affirmed.

ERIKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.