Harold PATZER and Theresa Patzer, Plaintiffs and Appellants,

v.

Cheri L. GLASER and Jeffrey Patzer, Defendants and Appellees.

Civ. No. 10756.

Supreme Court of North Dakota.

May 22, 1985.

562

See also, N.D., 355 N.W.2d 798.

Chapman & Chapman, Bismarck, for plaintiffs and appellants; argued by Daniel J. Chapman, Bismarck.

Evans & Moench, Bismarck, for defendants and appellees; argued by Deborah J. Carpenter, Bismarck.

GIERKE, Justice.

Harold and Theresa Patzer, the paternal grandparents of Steven Glaser, appeal from an order of the district court, dated August 7, 1984, awarding custody of Steven to his natural mother, Cheri Glaser-Patzer. We reverse and remand to the district court with directions to hold a new hearing to receive additional evidence upon which the court can make a redetermination of the custody issue.

Steven was born out of wedlock on May 7, 1979, when Cheri was 16 years old. Apparently, Jeff Patzer, Harold and Theresa's son, is Steven's father but paternity has not been legally established. During September 1983, Cheri and Jeff married, but they have subsequently separated.

After Steven was born, Cheri desired to complete her junior and senior years of high school. Rather than place Steven for adoption, Cheri agreed to give Harold and Theresa physical custody of Steven with responsibility to care and provide for him. Cheri, Jeff, Harold, and Theresa signed an agreement to this effect stating that Harold and Theresa would assume custody and control of Steven until the parties mutually consented otherwise or a "more formal recognized custodial agreement" became effective. The parties agree that this written agreement is not legally binding and that it was introduced into evidence to show the parties' intentions at the time

Cheri allowed Harold and Theresa to take custody of Steven.

During the two years following Steven's birth, Cheri completed high school. There is contrary evidence regarding the amount of time that Cheri spent with Steven while she attended high school. The district court found that Cheri "lived part-time" with Harold and Theresa and that she visited Steven "off and on" when she was not staying with them. During June 1981, after Cheri graduated from high school, she moved to Wyoming to obtain employment. She secured employment during October 1981 as a maid with the Holiday Inn at Casper, and she continued her employment there until February 1984. During this time Steven remained in the custody and care of Harold and Theresa. The trial court found that between June 1981 and August 1983, Cheri returned to North Dakota approximately ten times to visit with Steven.

During June 1983, Cheri wrote a letter to Harold and Theresa requesting them to visit her in Casper and stating that she wished to have Steven in her custody. Harold and Theresa did not respond to that letter, and on February 9, 1984, Cheri took Steven from Harold and Theresa's home while their teenage son was babysitting Steven.

Harold and Theresa then filed an action in the district court under the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C., in which they requested the court to order Cheri to return Steven to their custody. A hearing was held on March 26, 1984, at which Cheri did not appear, and the court issued an order, dated March 27, 1984, awarding Harold and Theresa custody of Steven. That order was based upon findings by the court that Steven had been placed in Harold and Theresa's custody during November 1979, when Steven was approximately six months old, and from that time they did "act as the parents of the minor child and provided the necessities of life, emotional and physical support and the nurture and care that parents are ordinarily responsible for."

By written motion Cheri requested the court to vacate its initial order of custody on the ground that she had not received notice of the March hearing. Harold and Theresa also filed a motion requesting the court to hold Cheri in contempt for failure to obey the March order to return Steven to their custody. On May 1, 1984, following a hearing on those motions, the trial court, concluding. that Cheri was in contempt, ordered her to return Steven to Harold and Theresa. The court further ordered that in the interest of justice it would reopen the custody issue and make a custody redetermination following a rehearing.

Cheri returned Steven to Harold and Theresa. Following a hearing on June 6, 1984, the district court entered a Final Order of Custody, dated August 7, 1984, awarding Cheri custody of Steven. From that order, Harold and Theresa have filed an appeal with this Court. By order of this Court Steven remains in Harold and Theresa's custody pending a final determination of this case.

In awarding Cheri custody of Steven following the June 1984 hearing, the trial court determined that although Harold and Theresa "cared for the needs of Steven essentially since he was six months old, no psychological structure developed." The court further determined that there was "no evidence professional or otherwise" that Harold and Theresa were the "psychological parents to Steven," and that there was "no evidence of any exceptional circumstances existing which require the placing of custody with" Harold and Theresa.

■ Parents have the right to the custody and companionship of their child superior to that of any other person, and an award of custody to the child's grandparents or other third party rather than to one of the parents is clearly erroneous unless exceptional circumstances require that such a custody disposition be made in the best interests of the child. *Daley v. Gunville,* 348 N.W.2d 441 (N.D.1984); *Mansukhani v. Pailing,* 318 N.W.2d 748 (N.D. 1982); *Hust v. Hust,* 295 N.W.2d 316 (N.D. 1980). Having reviewed the record in this

case, we conclude that there is insufficient evidence upon which the court could make a determination of whether or not there existed exceptional circumstances requiring the court to award custody of Steven to his paternal grandparents, Harold and Theresa, rather than to Cheri, his biological mother. We conclude that in the interest of justice it is necessary to remand this case to allow the parties an opportunity to introduce additional evidence, and to allow the trial court to order additional evidence within its proper discretion, to obtain an adequate evidentiary record on the custody issue.

Steven's paternal grandparents assert that they are his psychological parents who have provided him with all of his physical and emotional needs since he was six months old. The trial court found that assertion to be true following the ex-parte May 1, 1984 hearing. Nevertheless, following the June hearing, the trial court made a contrary finding that there was no evidence that Harold and Theresa were Steven's psychological parents. We believe there was inadequate evidence introduced during the June hearing to support the reversal of the trial court's original determination that Harold and Theresa had developed a psychological parent relationship with Steven. Unlike *Mansukhani, supra,* and *Daley, supra,* there was no expert testimony introduced in this case.

*Mansukhani, supra,* involved a custody dispute between the children's biological mother and paternal grandparents. There was testimony by three clinical psychologists who had evaluated the parties involved. Two of those evaluations were ordered by the court. There was also evidence of the results of a home study conducted by a Burleigh County social worker. The importance of the expert testimony was demonstrated when this Court, upon reversing the trial court's judgment, stated that although the trial court must be the judge of the credibility of expert witnesses

it cannot arbitrarily disregard their testimony. *Mansukhani, supra,* at 751.

In *Daley, supra,* a custody dispute between a child's mother and maternal grandmother, evaluations were ordered by stipulation of the parties to be prepared and submitted by Social Services, and the court also ordered professional evaluation of the child. Reports were received from the Montana Department of Public Welfare and the Lake Region Human Services Center of Devils Lake. In addition, evaluations were received from two psychologists.

Although we do not intend to imply that in every custody case there must be expert testimony to support the trial court's determination, we do conclude that under the circumstances of this case there is simply not adequate evidence for the court to make an informed custody determination. The record lacks substantial evidence regarding Steven's relationship with his biological mother and with his paternal grandparents. There are no home studies or other evidence for the court to consider relative to the existing home conditions and related circumstances of the parties, and there is little or no evidence regarding Steven's development and attitude as it relates to this custody dispute.

In a typical civil action one party has the burden of proof, and where there is inadequate evidence before the court the party having that burden must lose. In this custody dispute, however, Steven has the most at stake, but he has the least ability to protect his interests. If the court attempts to make a custody decision based upon an inadequate record and if that ultimately results in a decision that is not in Steven's best interest, then Steven has clearly lost. Thus, in Steven's best interest we conclude that it is necessary to remand this case for receipt of additional evidence upon which the court can make a redetermination of the custody issue.[1]

1. When the trial court reopened the case to allow a second hearing, it stated in relevant part:

"As I said, the Court Order is not—it's just indicative of attempting to restore what was the status quo before the child was taken

In accordance with this opinion, the order of the trial court is reversed and the case is remanded for an evidentiary hearing and a custody redetermination.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

LEVINE, Justice, dissenting.

A reading of the cases on parent-grandparent custody disputes raises as many questions as answers. Is there bonding, as a matter of law, whenever a young child spends the first few years of his life under the exclusive care of his grandparents? If not, is expert testimony necessary to establish bonding? If so, let us say as much to inform the bench and bar. If not, what kind of non-expert testimony is sufficient? If bonding is established by competent evidence, is expert testimony necessary to address the issue of the effect on the child of continuing or changing his custody? Again, if so, let us spread the word. If not, what kind of non-expert testimony is sufficient?

By remanding this case to adduce more evidence, we do little to guide judges or lawyers. We simply invite continuing confusion, uncertainty and appeals. The questions go unanswered.

I would affirm the district court's judgment awarding custody of Steven Glaser to his mother, Cheri. The trial judge weighed the evidence and observed and heard those giving it which, in a custody proceeding, is of inestimable significance. For a trial judge who has seen and decided dozens of custody disputes to observe that he is impressed "with the single minded resolution of Cheri Glaser to reobtain the custody of her son" indicates to me that Ms. Glaser's demeanor and credibility, in addition, of course, to her testimony, were compelling

enough for an experienced decision maker to be convincingly persuaded.

The trial judge characterized her conduct as "responsible", "mature", explaining that Ms. Glaser "surrounded herself with the home, work and planning necessary to take care of her son." He further concluded that "there is absolutely nothing in the record to reflect that the child will not be taken care of and his needs met at this time by his mother." The evidence was sufficient to demonstrate that the child would be well cared for by his mother. Photographs and the mother's testimony supported that finding. Remand will result only in further delay and agony for all concerned. This was a difficult case to begin with and it will not get easier with additional testimony.

We start with the basic premise that a parent's rights are superior to all third parties. When there is a custody dispute between a parent and third party "the test is whether or not there are exceptional circumstances which require that, in the best interests of the child, the child be placed [in the custody of] the third party rather than with his or her biological parents." *In re Buchholz*, 326 N.W.2d 203, 207 (N.D.1982), citing *Mansukhani v. Pailing*, 318 N.W.2d 748, 751 (N.D.1982). One of the exceptional circumstances is a psychological bonding between the child and the third party. The trial court found no such bonding in this case. The burden was on the grandparents to establish a psychological parental situation which, in Steven's best interests, would require placement of custody with them rather than with his mother. This, they did not do, either by expert testimony or by convincing testimony from themselves or other family members. We cannot and ought not retry cases

from the home of the Patzers where it had been making a home and it's not what the ultimate best interests of the child require.
"I won't know or don't know and won't know until such time as I have had an opportunity to hear everyone in this case. We all recognize I heard half the case or sort of what could be presented because no one showed up."

By the court's statement that "I heard half the case or sort of ...," the parties could have misunderstood whether or not the court would reconsider its initial determination that there was a psychological parent relationship between Steven and his paternal grandparents. For that reason, also, we believe justice requires that the parties be given the opportunity to enter additional evidence.

for litigants. The burden of proof was on the grandparents. The trial court was not persuaded. Nor did it deem it necessary to request additional testimony to make its decision.

Further, I believe there is a compelling social policy at stake here. A sixteen-year-old child resolutely determines to give birth to her child, to resist placing that child for adoption but instead, to maintain her parental rights to and connection with that child, assisted and encouraged to do so by the same grandparents who now contest her right to exercise custody and control. There is no question that the arrangement for Steven's care by the grandparents was intended to be temporary. A young mother should be encouraged to seek reasonable help for her child from family members without the risk of losing custody to those profferring assistance.

This is not a case where a mother has been found unfit by the judge or where the grandparents assert she is unfit. They simply allege that she is not yet ready to assume custody and control of her son. Cheri Glaser is 21 years old and the trial court found, based on sufficient evidence, that she has been preparing for this day for five years. The trial court concluded she is ready, willing and able to care for Steven and that it is in Steven's best interests that she do so.

I would affirm the trial court's decision and let Steven and his mother as well as his grandparents get on with their lives. I respectfully dissent.

MESCHKE, J., concurs.