**Harold PATZER and Theresa Patzer, Plaintiffs and Appellants,**

**v.**

**Cheri L. GLASER and Jeffrey Patzer, Defendants and Appellees.**

**Civ. No. 11216.**

Supreme Court of North Dakota.

Dec. 2, 1986.

---

Chapman & Chapman, Bismarck, for plaintiffs and appellants; argued by Daniel J. Chapman.

Evans & Moench, Bismarck, for defendants and appellees; argued by Cameron W. Hayden.

LEVINE, Justice.

Harold and Theresa Patzer, the paternal grandparents of Steven Glaser, appeal from a district court order, dated February 21, 1986, awarding custody of Steven to his natural mother, Cheri Glaser-Patzer. We affirm.

Previously, Harold and Theresa appealed from an August 7, 1984 district court order awarding Cheri custody of Steven. In *Patzer v. Glaser*, 368 N.W.2d 561 (N.D.1985), [*Patzer I*], we remanded the case to the district court for receipt of additional evidence and a redetermination of the custody issue. Following a hearing on October 1–2, 1985, at which additional evidence was introduced by the parties, the district court entered the February 1986 judgment awarding custody of Steven to Cheri. Many relevant facts have been recited in *Patzer I, supra,* and will not be repeated in this opinion.

In essence, Harold and Theresa have raised the following issues for this Court's review on appeal:

(1) Whether the trial court abused its discretion in refusing to consider Steven's placement preference;

(2) Whether the trial court abused its discretion in refusing Harold and Theresa's request for a court ordered custody investigation and report pursuant to Section 14–09–06.3, N.D.C.C.;

(3) Whether the trial court's finding that Harold and Theresa are not Steven's psychological parents is clearly erroneous; and

(4) Whether the trial court's finding that there are not exceptional circumstances which require that Steven, in his best interests, be placed in the custody of his grandparents is clearly erroneous.

At the October 1985 hearing Doctor Peter C. Peterson, a clinical psychologist, testified as an expert on behalf of Harold and Theresa. The trial court sustained an objection to having Dr. Peterson relate Steven's custody preference. On appeal Harold and Theresa assert that the trial court

erred in refusing to consider Steven's preference in making its custody decision.

■ Under Section 14–09–06.2(9), N.D. C.C., a child's custody preference is a factor for the court to consider in rendering a custody decision "if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference." In refusing to consider Steven's custody preference the trial court implicitly determined that, with regard to Steven's age and development, his stated preference would not be particularily helpful. Dr. Peterson testified that a six year old child is not able to make an analytical judgment, and he also testified that the question of whether the stated preference of a six year old child is of any benefit is a "controversial point." Under the circumstances of this case and in view of Dr. Peterson's testimony, we conclude that the trial court did not abuse its discretion in refusing to consider Steven's custody preference.

■ Harold and Theresa also assert that the trial court erred in denying their request for a court ordered custody investigation and report under Section 14–09–06.3, N.D.C.C. Under that provision, the trial court "may" order a custody investigation and report upon the request of either party or upon its own motion. The trial court denied Harold and Theresa's request but later ordered studies of the home facilities available to Steven with his grandparents and his mother. The trial court also gave the parties an opportunity to introduce at the October 1985 hearing any additional evidence they desired the court to consider in making its custody redetermination. We conclude that, under these circumstances, the trial court did not abuse its discretion in denying Harold and Theresa's request for an investigation and report under Section 14–09–06.3, N.D.C.C.

Harold and Theresa assert that the trial court's finding that they are not Steven's psychological parents is clearly erroneous. In *Patzer I, supra,* we remanded this case to the trial court for receipt of additional evidence upon which it could make a rede-

termination on the custody issue. In so doing we made the following statement which is relevant to this issue:

> "Steven's paternal grandparents assert that they are his psychological parents who have provided him with all of his physical and emotional needs since he was six months old. The trial court found that assertion to be true following the ex-parte May 1, 1984 hearing. Nevertheless, following the June hearing, the trial court made a contrary finding that there was no evidence that Harold and Theresa were Steven's psychological parents. We believe there was inadequate evidence introduced during the June hearing to support the reversal of the trial court's original determination that Harold and Theresa had developed a psychological parent relationship with Steven."

At the October 1985 hearing Dr. Peterson testified that there is a psychological parent relationship between Steven and his grandparents, Harold and Theresa:

> "Well, my general impression is that there is no question in my mind that Steve perceives the Patzers to be his parents—his psychological parents. They have cared for him primarily since he was six months old. He refers to them as Mom and Dad. He refers to the Patzers as his family. He even calls their son—their fifteen year old son his brother. There's no question in my mind that he perceives them to be his family, his mom and dad."

Dr. Peterson's testimony was the only direct evidence introduced on this issue of psychological parent bonding. There was no evidence adduced at the hearing to controvert Dr. Peterson's conclusion that Harold and Theresa had established a psychological parent relationship with Steven.

■ The trial court made a finding that Dr. Peterson "does not understand psychological bonding" and further found that "there is no credible evidence that there has been psychological bonding" between Steven and his grandparents. We are con-

vinced that both findings by the trial court are clearly erroneous. When asked to explain his understanding of the term "psychological parent" Dr. Peterson responded:

"What I mean by psychological parent is that this is the parent or parents that the child perceives· to be the primary caretaker in his or her life, the primary emotional bond that the [c]hild has is with these people—with the psychological parents. Usually in this kind of situation, it's—the majority of the child's early memories are with the psychological parent."

Those persons who provide a child's daily care and who, thereby, develop a close personal relationship with the child become the psychological parents to whom the child turns for love, guidance, and security. *See Mansukhani v. Pailing*, 318 N.W.2d 748 (N.D.1982); *In Interest [Custody] of D.G.*, 246 N.W.2d 892 (N.D.1976). The record in this case clearly demonstrates that Harold and Theresa have been Steven's primary caretakers since he was six months old; that Steven has formed a close personal relationship with them; and that Steven perceives them to be his "mom and dad." We are convinced that there was inadequate evidence introduced at the October 1985 hearing upon which the trial court could reverse its initial finding of a psychological parent bonding. We conclude, therefore, that the trial court's finding that Harold and Theresa are not Steven's psychological parents is clearly erroneous.

Cheri's placement of Steven with Harold and Theresa and the resultant parental bonding between Steven and these grandparents constitute exceptional circumstances. Harold and Theresa assert that the trial court's finding that such circumstances do not require that Steven be placed in their custody is clearly erroneous. We disagree.

█ It is well settled that parents have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person. *Hust v. Hust*, 295 N.W.2d 316 (N.D.1980). The establishment of a psychological parent relationship does not end a trial court's inquiry; rather it necessitates further inquiry as to whether the exceptional circumstances of the case require that the child remain in the custody of the psychological parents. *See Daley v. Gunville*, 348 N.W.2d 441 (N.D.1984). In a case such as this, where a psychological parent and a natural parent each seek a court ordered award of custody, the natural parent's paramount right to custody must prevail unless the court determines that it is necessary in the best interests of the child to award custody to the psychological parent to prevent serious detriment to the welfare of the child. *See Hust v. Hust, supra; Mansukhani v. Pailing, supra.*

█ In *Mansukhani, supra*, we held that exceptional circumstances existed that required the court to place the children in the legal custody of their grandparents rather than with their natural mother. When the children were very young their parents were divorced and the children then resided with their father and paternal grandparents. Following the death of the children's father their mother sought to obtain custody of them, but by that time the grandparents had provided the children's care and support for more than three and one half years and a psychological parent relationship had been established. There was evidence that the children did not have a personal relationship with the mother and that on one occasion the children did not know who she was when she appeared for a visit. There was substantial testimony by several experts in that case to the effect that placing the children in the custody of their natural mother would have a seriously disruptive and detrimental effect on the children. In this case, unlike the situation in *Mansukhani, supra*, there is no evidence that serious detriment would occur to Steven if placed in Cheri's custody.

In *Daley v. Gunville, supra*, we held that exceptional circumstances existed which required that the child remain in the custody of her maternal grandmother rather than be placed with her natural mother.

In that case, as in *Mansukhani, supra,* there was testimony that removing the child from the psychological parent's home to live with her natural mother would be disruptive and that the child would suffer harm from such a move.

In this case the trial court found that Steven loves his mother, Cheri, and is compatible with her as a parent. Dr. Peterson testified that Steven perceives Cheri as a friend and that Steven does not show any kind of aversion whatsoever to Cheri. Dr. Peterson further testified that Cheri presents herself in such a manner as to demonstrate that she is desirous of establishing a parent/child relationship with Steven. Although Dr. Peterson testified that in his opinion "it would be disruptive for Steve to just be moved in with his natural mother," he also testified that placing Steven in Cheri's custody is "a goal that should be strived for." There was no testimony by Dr. Peterson or any other evidence that Steven would sustain serious harm or detriment if he were now placed in his mother's custody rather than that of his grandparents, Harold and Theresa.

Thus, this case is distinguishable from prior cases such as *Mansukhani, supra,* and *Daley, supra,* in which we have held that there were exceptional circumstances requiring, in the child's best interests to prevent serious harm or detriment to the child, that the child remain in the custody of the psychological parent(s) and not be transferred to the custody of the child's natural parent. In those prior cases, unlike this case, there was substantial evidence to demonstrate that the children would sustain serious harm or detriment if they were transferred from the stability of their psychological parent's home to the natural parent with whom there was neither bonding nor a close personal relationship.

We are not convinced that the trial court's finding that the circumstances of this case do not require that Steven be placed in Harold and Theresa's custody rather than with his natural mother is clearly erroneous. Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I am unconvinced that, for the most part, the exceptional circumstances in this case are substantively distinguishable from those in *Daley v. Gunville,* 348 N.W.2d 441 (N.D.1984), and *Mansukhani v. Pailing,* 318 N.W.2d 748 (N.D.1982); but it does appear from the testimony of the expert witness that taking Steven from his psychological parents and placing him with his natural mother will cause short-term disruption as opposed to serious harm or detriment. Because this is not sufficient to outweigh the right of Cheri to the custody and companionship of her child, I concur in the result reached by the majority opinion. Steven apparently is an exceptional child in his ability to relate to all of the parties to this action.

GIERKE, J., concurs.