701 N.W.2d 402 (2005)
2005 ND 122
In the Matter of GUARDIANSHIP OF Steven Michael BARROS, a Minor.
Machelle Barros, Petitioner and Appellant
v.
Guy and Devra Smestad, Respondents and Appellees.
No. 20040255.
Supreme Court of North Dakota.
July 13, 2005.
*403 Lynn M. Boughey, Boughey Law Firm, Minot, N.D., for petitioner and appellant.
Charles G. DeMakis, Olson & Burns P.C., Minot, N.D., for respondents and appellees.
MARING, Justice.
[¶ 1] Machelle Barros ("Shelly") appeals from a trial court order that denied *404 various motions including her motion to reconsider, motion for a new trial, motion to order visitation, motion to reconsider rulings on discovery and specifically ordered "Petitioner's Motion and Request to Terminate the Guardianship is denied." The motions followed the trial court's denial of her petition to rescind the guardianship of her child, Steven Barros. We affirm the trial court's discovery rulings, reverse the denial of the motion to terminate the guardianship, and remand for further proceedings consistent with this opinion.

I
[¶ 2] In July 2002, Shelly petitioned for a guardianship of her son, Steven Barros. In the petition, Shelly stated it was in Steven's best interest to live with his aunt and uncle, the Smestads. After a hearing, the trial court appointed Guy and Devra Smestad guardians of Steven Barros. The trial court noted that Steven needed stability in his life, was insubordinate to his mother, failed to follow her rules, and his best interests would be served by living with the Smestads. In December 2003, Shelly petitioned to rescind the guardianship. At the hearing, Shelly presented evidence showing since the guardianship began she has obtained a new job in Chicago, is able to move into a two bedroom apartment, is secure in her finances and personal life, and has researched the availability of activities for Steven in her residential area. After the hearing, the trial court denied the petition finding there was no statutory basis for rescission and it was in Steven's best interest to remain with the Smestads.

II
[¶ 3] Shelly argues the trial court improperly refused to terminate the guardianship, which she asserts has a practical effect similar to terminating her parental rights. The Smestads argue the trial court properly refused to rescind the guardianship because Shelly did not follow the statutorily prescribed method to terminate a guardianship.
[¶ 4] Shelly filed a "PETITION TO RESCIND GUARDIANSHIP ORDER OF AUGUST 30, 2002." Section 30.1-27-10, N.D.C.C., states: "A guardian's authority and responsibility terminates upon the death, resignation, or removal of the guardian, or upon the minor's death, adoption, marriage, or attainment of majority." Any person interested in the welfare of a ward may bring a petition for resignation or removal of the guardian. N.D.C.C. § 30.1-27-12(1). The petition for removal of a guardian must be based on the grounds "that removal would be in the best interest of the ward." Id. In a custody proceeding, the best interests and welfare of a child are determined by a court's consideration and evaluation of several factors:
a. The love, affection, and other emotional ties existing between the parents and child.
b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.
e. The permanence, as a family unit, of the existing or proposed custodial home.
f. The moral fitness of the parents.

*405 g. The mental and physical health of the parents.
h. The home, school, and community record of the child.
I. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence....
k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.
l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.
N.D.C.C. § 14-09-06.2(1). A guardian of a minor "has the powers and responsibilities of a parent who has not been deprived of custody." N.D.C.C. § 30.1-27-09. Because a guardian acts in place of a parent, the best interest factors that are used in custody determinations are also used in guardianship proceedings. See, e.g., In re Estate of Webb, 286 Ill.App.3d 99, 221 Ill. Dec. 285, 675 N.E.2d 192, 194 (1996) (applying the best interest analysis used in custody determinations to guardianship proceedings); Matter of Guardianship of Stewart, 369 N.W.2d 820, 824 (Iowa 1985) (noting the best interests must be considered in all custody matters).
[¶ 5] Clearly, Shelly's inartfully drawn petition did not use the statutory language for removal of a guardian. But it does specifically request that "the guardianship previously made at her request be rescinded as of the last day of the minor's present academic school year." The trial court erred in concluding the issue of terminating the guardianship was not properly before it. See Kaiser v. State, 417 N.W.2d 175, 177 (N.D.1987) (stating, "it is not the label which controls but, rather, the effect"). The petitioner complicated the issue by asserting that the best interests consideration was not necessary to "rescind" the guardianship, but the best interest factors were effectively tried. At the hearing, the trial court heard a large amount of testimony related to the best interest factors. Because the trial court effectively tried the best interests of the ward, it erred by failing to consider removal of the guardians, rather than rescission of the original order, and to make findings of fact based on those factors to decide whether the Smestads should be removed as guardians. We reverse the trial court's denial of the petition. Because this is a case of first impression in this jurisdiction, we further consider the burdens of proof under the statutory framework for removal of a guardian.

III
[¶ 6] Shelly argues because she has a fundamental right as a parent to custody of Steven, the trial court erred by placing the burden of proving that the guardianship should be terminated on her. She argues that, after proving the circumstances leading to the guardianship have changed, the burden must shift to the Smestads to prove by clear and convincing evidence that it is in Steven's best interests to continue the guardianship. The Smestads argue the burden of proof should *406 be the same as custody modifications because the guardians are acting as parents. They argue the burden should be on the moving party to prove termination would be in the best interests of the child.
[¶ 7] We have not previously decided the issue of which party has the burden of proof in a proceeding to terminate a voluntary guardianship brought by a parent who has not been adjudicated unfit. Jurisdictions that have considered this issue place the burden of proof on the petitioner to prove the impediments leading to the guardianship have been removed. See, e.g., Guardianship of Simpson, 67 Cal. App.4th 914, 79 Cal.Rptr.2d 389, 401 (1998); Matter of Guardianship of M.R.S., 960 P.2d 357, 361 (Okla.1998).
[¶ 8] California applies a preponderance of the evidence standard in guardianship termination proceedings when the parent has not been adjudicated unfit. Guardianship of Simpson, 79 Cal.Rptr.2d at 401. The burden is on the parent to show "overall fitness ... sufficient to overcome the inherent trauma of removing a successful caregiver." Id. at 400. The court noted this is usually an easy burden to prove because either the parent is released from the hospital or the trouble causing the guardianship has been removed. Id. at n. 14. In Illinois, a parent must also show a change in circumstances warranting the termination. In re Estate of Webb, 286 Ill.App.3d 99, 221 Ill.Dec. 285, 675 N.E.2d 192, 194 (1996). We conclude Shelly must initially prove, by a preponderance of the evidence, the impediments leading to the creation of the guardianship have been removed. See, e.g., Guardianship of Simpson, 79 Cal.Rptr.2d at 400-01.
[¶ 9] If the initial burden is met, then we must decide who has the burden of persuasion in applying the best interest factors. It is undisputed that parents have a fundamental right to the custody and control of their children. Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). We have repeatedly addressed the constitutional nature of parents' rights in raising their children.
Parents have a fundamental, natural right to their children which is of constitutional dimension. In re L.F., 1998 ND 129, ¶ 9, 580 N.W.2d 573; Kleingartner v. D.P.A.B., 310 N.W.2d 575, 578 (N.D. 1981). The right is paramount. In re R.D.S., 259 N.W.2d 636, 638 (N.D.1977). A parent's paramount and constitutional right to the custody and companionship of their children is superior to that of any other person. Patzer v. Glaser, 396 N.W.2d 740, 743 (N.D.1986); Hust v. Hust, 295 N.W.2d 316, 318 (N.D.1980); Boeddeker v. Reel, 517 N.W.2d 407, 409 (N.D.1994).
Hoff, 1999 ND 115, ¶ 10, 595 N.W.2d 285. However, that right is not absolute and unconditional; it may be suspended if harmful to the child. State v. Ehli, 2003 ND 133, ¶ 7, 667 N.W.2d 635.
[¶ 10] We have previously noted the superior rights parents have to the custody of their children over third parties. Worden v. Worden, 434 N.W.2d 341, 342 (N.D.1989). A majority of jurisdictions have recognized a similar form of superior right or parental preference doctrine. See Matter of Guardianship of Williams, 254 Kan. 814, 869 P.2d 661, 670 (1994) (citing cases from twenty-eight states recognizing a form of parental preference). This preference merely creates a rebuttable presumption that parental custody is in the best interests of the children and is not the end of the inquiry.
[¶ 11] In Worden, we stated:
When there is a custody dispute between a natural parent and a third party the test is whether or not there are *407 exceptional circumstances which require that in the best interest of the child, the child be placed in the custody of the third party rather than with the biological parent. The court cannot award custody to a third party, rather than the natural parent, under a "best interest of the child" test unless it first determines that "exceptional circumstances" exist to trigger the best-interest analysis. Absent exceptional circumstances the natural parent is entitled to custody of the child even though the third party may be able to offer more amenities.
Worden, 434 N.W.2d at 342 (citations omitted). The voluntary guardianship creates an "exceptional circumstance" that triggers the best interest of the child test. Shelly voluntarily consented to the Smestads becoming legal guardians of Steven during a difficult time in her life. She has not been adjudicated an unfit parent. We do not want to discourage parents from seeking help in caring for their children by risking the loss of custody. See Matter of Guardianship of Nelson, 519 N.W.2d 15, 20 (N.D.1994) (Levine, J., concurring) (citations omitted) (stating, "We should encourage involvement of extended family in childcare without endangering the parent-child relationship. A young mother should be encouraged to seek reasonable help for her child from family members without the risk of losing custody to those proffering assistance.").
[¶ 12] Shelly argues that after she proves the circumstances leading to the guardianship have changed, the burden must shift to the Smestads to prove by clear and convincing evidence that it is in the child's best interests to continue the guardianship. Because of the presumptive right of a natural parent to custody of a child, we agree the burden must shift to the nonparent, however, we disagree that a clear and convincing standard applies.
[¶ 13] This is a guardianship termination proceeding. More specifically, this is an action to terminate a voluntarily-established guardianship of a minor. It is not an action to terminate parental rights, or to adjudicate a child deprived; both of which would require proof that is clear and convincing. Matter of Adoption of J.W.M., 532 N.W.2d 372, 377 (N.D.1995). Here, the government is not "wresting" a child from a parent against the wishes of a parent or terminating parental rights. See Guardianship of Simpson, 67 Cal.App.4th 914, 79 Cal.Rptr.2d 389, 400 (Cal.Ct.App. 1998). Our legislature did not provide a standard of proof to be applied in the termination of a guardianship of a minor. See N.D.C.C. § 30.1-27-12(1). Our Court has never addressed the standard of proof necessary to support the continuation of a guardianship for a minor, and Shelly has not provided any authority supporting her argument that a clear and convincing standard should apply.
[¶ 14] The only authority this Court has found to support Shelly's argument that a nonparent must present clear and convincing evidence that the best interests of the child will be served by granting custody to the nonparent is Matter of Guardianship of Blair, 662 N.W.2d 371, No. 2-950, 2003 WL 182981 at *5, 2003 Iowa App. LEXIS 102 at *13 (Iowa Ct. App. Jan. 29, 2003). In Matter of Guardianship of Blair, the Iowa Court of Appeals held that the nonparent bears the burden of proof to "rebut the presumption favoring parental custody by providing clear and convincing evidence of parental unsuitability." Id. at *5. We do not find this case persuasive for several reasons.
[¶ 15] First, the decision is without a published opinion. The Iowa courts allow citation to unpublished decisions only for their persuasive value and not as controlling precedent. Iowa Appellate Rule *408 6.4(5)(6). Although our Court has not formally adopted such a rule, we believe such decisions should only have value for their persuasive reasoning. Such is totally lacking in Matter of Guardianship of Blair. There, the Iowa Court of Appeals applied a clear and convincing standard of proof only because their statute requires proof of necessity for a guardianship by clear and convincing evidence. Id. at *4. Our statute does not provide a standard of proof of clear and convincing evidence. See N.D.C.C. § 30.1-27-12(1). Compare N.D.C.C. § 25-03.1-19 (providing a petition for involuntary treatment must be sustained by clear and convincing evidence); N.D.C.C. § 14-09-06.2 (providing a presumption that a parent, who perpetrated domestic violence, may not be awarded sole custody of a child can only be overcome by clear and convincing evidence); N.D.C.C. §§ 27-20-29 and 27-20-44 (providing that to find a child is a deprived child requires clear and convincing evidence); and N.D.C.C. § 30.1-28-04(2)(b)(1) (providing that to impose a guardianship for an incapacitated person the court must use a clear and convincing evidentiary standard).
[¶ 16] Our Court has never applied a clear and convincing standard of proof in our decisions addressing the test to be applied in disputes between parents and nonparents over custody of a minor. See Mansukhani v. Pailing, 318 N.W.2d 748, 751 (N.D.1982) (holding fitness as a parent is not the test; the test is whether exceptional circumstances exist which require in the child's best interests custody be placed in nonparents rather than a parent, and recognizing a strong psychological parent relationship can constitute exceptional circumstances); Worden v. Worden, 434 N.W.2d 341, 342 (N.D.1989) (holding the test is whether exceptional circumstances exist which require that, in the best interest of the child, custody be placed in a nonparent rather than a biological parent).
[¶ 17] We do not believe the concerns that require a clear and convincing standard of proof in the termination of parental rights context apply in this situation. A guardianship is not permanent and does not lead to absolute termination of all parental rights. It does not deprive the parent of a parental role forever and allows for the establishment of visitation rights. See Hobus v. Hobus, 540 N.W.2d 158, 161 (N.D.1995) (holding "parental obligations are not dismissed by the appointment of a guardian, ... On the contrary, the appointment of a guardian should indicate to the parent a need to better fulfill parental obligations.").
[¶ 18] Under our guardianship of minors' law, the trial court must determine whether the welfare and best interest of the minor will be served by the appointment of the guardian. N.D.C.C. § 30.1-27-07(2). Likewise, the termination of a guardianship must be based on the ground that removal would be in the best interest of the minor. N.D.C.C. § 30.1-27-12(1). The guardianship of minors' law applies to both voluntarily established and involuntarily established guardianships. Determining the best interest of the minor does not necessarily require a finding that the parent is unfit. The determination can focus on who is better fit to parent the child at that time. In her petition for guardianship, Barros stated, "[t]he child's best interests will be served by guardianship with his aunt and uncle who can provide him with stability, care and supervision the child requires." She further stated she could not fulfill her child's needs. The trial court found that the welfare and best interests of the minor would be served by appointment of a guardian and "suspended" the parental *409 rights of Barros due to these circumstances.
[¶ 19] As we previously noted, the natural parent must initially prove, by a preponderance of the evidence, that the impediments leading to the creation of the guardianship have been removed. A nonparent seeking custody then has the burden of rebutting the presumption that it is in the best interests of the child to be in the custody of the parent. The presumption can be overcome when there exist "exceptional circumstances." We recognize today as a matter of law that a voluntarily established guardianship constitutes "exceptional circumstances." This conclusion triggers a best interest of the child analysis as required by our guardianship of minors' law. The burden of proof is then on the nonparent to establish it is in the best interest of the child that the guardianship continue. We conclude the evidentiary burden placed on the nonparent, is a preponderance of the evidence, because there is no persuasive reason to use a clear and convincing evidentiary standard. This evidentiary burden of proof applies in all terminations of a guardianship of a minor. In determining the best interest of the child, the trial court must weigh the benefits of stability of the child's relationship with the guardian and the benefits of the child's relationship with the natural parent. This analysis is supported by our statutes and prior case law.
[¶ 20] Although Shelly did not follow the proper statutory method of removing a guardian, she is effectively seeking termination of that guardianship. We reverse the trial court's denial of Shelly's motion and remand for the trial court to consider termination of the guardianship applying this analysis.

IV
[¶ 21] Shelly argues the trial court failed to allow adequate discovery because it limited discovery to what occurred since the guardianship began and would not allow discovery of whether the guardianship was properly obtained due to Shelly's attorney's alleged conflict of interest in the original guardianship proceeding. Shelly asserts the conflict of interest arose because the attorney represented both her and the potential guardians during the proceedings creating the guardianship.
[¶ 22] A trial court has broad discretion regarding the scope of discovery. Smith v. Smith, 538 N.W.2d 222, 230 (N.D.1995). Absent an abuse of discretion, a trial court's discovery decisions will not be reversed on appeal. Id. "A trial court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misapplies or misinterprets the law." Id. Because Shelly did not appeal the original guardianship order, any documents relating to the creation of the guardianship are not relevant. The trial court properly limited discovery to what has occurred since the guardianship began; the trial court did not abuse its discretion when it limited Shelly's access to the file of the attorney who drafted the petition for guardianship.

V
[¶ 23] Shelly argues the trial court erred by refusing to order visitation. A court establishing a guardianship has the authority to order visitation. Matter of Guardianship of Nelson, 519 N.W.2d 15, 20 (N.D.1994). In custody proceedings, a court shall grant the noncustodial parent visitation rights that will "enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child" unless the *410 court finds that visitation will be harmful to the child. N.D.C.C. § 14-05-22(2). The record contains no allegations that Shelly is unfit or that visitation will be harmful. If the trial court denies Shelly's motion to remove the Smestads as guardians, it must enter an appropriate visitation order to maintain a parent-child relationship that will be beneficial to the child.

VI
[¶ 24] We affirm the trial court's rulings limiting discovery. We reverse the denial of Shelly's motion to terminate the guardianship and remand for further proceedings consistent with this opinion. If the trial court continues the guardianship, it must consider visitation.
[¶ 25] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, JJ., concur.
KAPSNER, Justice, concurring in part and dissenting in part.
[¶ 26] I concur with the majority opinion except for the standard of proof that it establishes for deciding whether the guardianship should continue. I agree with the majority opinion that because of the parental preference, the burden shifts to the nonparent; I believe, however, the standard to be applied should be the clear and convincing standard. It is undisputed that parents have a fundamental right to the custody and control of their children. Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The United States Supreme Court has described this interest as "perhaps the oldest of the fundamental liberty interests recognized by this Court." Id. at 65, 120 S.Ct. 2054.
The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," "basic civil rights of man," and "rights far more precious ... than property rights." "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment.
Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (citations omitted). The pursuit of happiness guaranteed by the North Dakota Constitution includes "the right to enjoy the domestic relations and the privileges of the family and the home ... without restriction or obstruction ... except in so far as may be necessary to secure the equal rights of others." Hoff v. Berg, 1999 ND 115, ¶ 10, 595 N.W.2d 285 (citation omitted); N.D. Const. art. I, § 1. This right is protected and insured by the due process clause of our Constitution. N.D. Const. art. I, § 12. We have repeatedly addressed the constitutional nature of parents' rights in raising their children.
Parents have a fundamental, natural right to their children which is of constitutional dimension. In re L.F., 1998 ND 129, ¶ 9, 580 N.W.2d 573; Kleingartner v. D.P.A.B., 310 N.W.2d 575, 578 (N.D. 1981). The right is paramount. In re R.D.S., 259 N.W.2d 636, 638 (N.D.1977). A parent's paramount and constitutional right to the custody and companionship of their children is superior to that of any other person. Patzer v. Glaser, 396 N.W.2d 740, 743 (N.D.1986); Hust v. Hust, 295 N.W.2d 316, 318 (N.D.1980); Boeddeker v. Reel, 517 N.W.2d 407, 409 (N.D.1994).
Hoff, 1999 ND 115, ¶ 10, 595 N.W.2d 285.
[¶ 27] Shelly has not been proven to be an unfit parent; indeed, there is no suggestion *411 in the record that she is an unfit parent. Recognizing the fundamental nature of her right to raise her child, to continue the guardianship, the Smestads must overcome the presumption that parents have a superior right to the custody of their children and must prove by clear and convincing evidence it is in the child's best interest to continue the guardianship. I am persuaded by the reasoning of Matter of Guardianship of Blair, 662 N.W.2d 371, No. 2-950, 2003 WL 182981 at *5, 2003 Iowa App. LEXIS 102, at *13 (Iowa Ct.App. Jan. 29, 2003) that this standard is necessary to accommodate the fundamental rights of the parent under circumstances where the parent has not been adjudicated unfit.
[¶ 28] The majority opinion indicates that because the statute does not impose a burden of proof, the standard must be the preponderance of evidence. The statute applicable to the removal of a guardian does not impose a standard of proof. N.D.C.C. § 30.1-27-10. However, the statutory conditions for appointment of a guardian and the effect of the appointment on the rights of the parent do suggest that an elevated standard of proof should apply. Under N.D.C.C. § 30.1-27-04, "[t]he court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order." The statute applicable to the termination of parental rights, N.D.C.C. § 27-20-44, does not contain an explicit directive on the burden of proof yet it is constitutionally required that courts apply a burden of clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 747-78, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Section 30.1-27-09, N.D.C.C., recognizes that "[a] guardian of a minor has the powers and responsibilities of a parent who has not been deprived of custody of the parent's minor and unemancipated child." Section 14-09-20, N.D.C.C., states "[t]he authority of a parent ceases: 1. Upon the appointment by a court of a guardian of the person of a child..." The majority asserts the appointment and continuation of a guardianship is not a termination of the parental rights. But it is a clear suspension of those parental rights that the Stanley court has described as "essential," "basic civil rights." 405 U.S. at 651, 92 S.Ct. 1208. Where a parent has not been proven unfit, the continuing suspension of those fundamental rights requires that the burden of proof be by clear and convincing evidence that it is in the child's best interest.
[¶ 29] Carol Ronning Kapsner